## NICKERSON v. NICKERSON.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 881. Submitted January 6, 1888. — Decided May 14, 1888.

On the proof in this case the court holds that the plaintiff has failed to show such an agreement as can be made the basis of a decree in her behalf.

IN EQUITY. Decree dismissing the bill. Complainant appealed. The case is stated in the opinion.

*Mr. J. J. Johnson* and *Mr. W. W. Wilshire* for appellant.

*Mr. Enoch Totten* for Azor H. Nickerson, appellee.

*Mr. Henry Wise Garnett* and *Mr. Conway Robinson, Jr.,* for appellants Carter and Matthews.

MR. JUSTICE HARLAN delivered the opinion of the court.

The substantial relief which the appellant, who was the plaintiff below, seeks in this suit is a decree (1) declaring void a conveyance executed May 31, 1883, by William B. Matthews, trustee, to the appellee, Lena D. Carter, by the name of Lena D. Nickerson, of lot two, in square one hundred and fourteen, in the city of Washington; (2) establishing, in behalf of the plaintiff, certain trusts in respect to said real estate; (3) and requiring Matthews and said Lena to convey the same to the plaintiff, or to trustees for the benefit of herself and the child of her marriage with the defendant, Azor H. Nickerson. Her bill asking such relief was dismissed with costs.

The case made by the bill is as follows:

The plaintiff, while on a visit to. Portland, Oregon, in the year 1870, engaged herself to be married' to the defendant Nickerson, then on duty in that city as an officer of the army of the United States. Prior to such engagement, he pointed out to her blocks 145 and 146 in Couch's Addition to Portland as his property, and " promised and agreed " that after marriage he would convey them to her as a marriage portion or settlement for the benefit of herself and any children of their marriage, and erect thereon a dwelling house for their use; or, if she so elected, they would sell the blocks and invest the proceeds in other property in Portland, to be held upon like trusts, and, after having advanced in value, sold and the proceeds applied exclusively to the purchase of a house for the plaintiff and her children.

The plaintiff's mother, who resided in San Francisco, having been informed of this engagement, objected to the marriage upon the gound that the defendant was an officer of the army, without settled place of abode, or other means of support than his pay as such officer. But her objections, the bill states, were overcome by the defendant's verbal assurance to her to the following effect: That the question of support had been considered by the plaintiff and himself; that he was the owner of certain blocks of ground in the city of Portland, and that he had promised and agreed with the plaintiff that if she would marry him, he would, immediately after marriage, convey them to the complainant as a marriage settlement, or would

hold them as trustee for her separate benefit, and if at any time sold, the proceeds should be invested in other property, to be held in like manner for the sole and separate benefit of the plaintiff and her children. Upon the strength of these promises and representations, and relying upon the good faith of the respondent Nickerson, and in consideration thereof, and for no other reason or consideration whatever, the plaintiff's mother, it is alleged, withdrew her objection, and consented to the marriage, which occurred on the 13th day of August, 1870. Without her mother's consent, the plaintiff avers, the marriage would not have taken place.

It is also alleged that the plaintiff, relying upon the love and affection of her' husband; having confidence that he would, in good faith, keep and perform his agreement; and preferring that the property should be managed by him, without the complications necessarily arising from the interposition of third parties, did not require the lots to be conveyed to trustees for her benefit, but permitted the title to remain in the defendant, "subject to her equitable interests under said agreem°

Abɩ... a month after the marriage the plaintiff and the defendant united in selling said blocks of ground, the proceeds being invested jointly with one John S. Walker in certain lots in Portland. Walker having died, a division of these lots was effected by judicial proceedings, which were concluded in 1878. In respect to the lots assigned in this division to the defendant, the bill alleges that they were held by him — although there were no writings between them on the subject — "for the sole and separate benefit of the complainant," and "as her trustee under the agreement, promise and consideration" hereinbefore stated.

While the plaintiff was temporarily residing in Europe, under circumstances to be presently stated, the defendant sold the lots last described and transmitted deeds therefor to be executed by her. The bill states that, not doubting the affection of her husband or his good faith in keeping his agreement, and perceiving from the consideration mentioned in the deeds ($12,000) that the lots had sufficiently increased in value

to enable him to carry out his promise to purchase a home for her and her child, the plaintiff executed the deeds — bearing the dates, respectively, of November 26, 1881, December 2, 1881, and January 10, 1882 — and returned them to the defendant, with a letter "imploring him to be extremely cautious as to handling said money and in making proper reinvestments."

Instead of investing the moneys received for the lots in a house for the plaintiff and her child, the defendant, the bill charges, in execution of a purpose to deprive her of all benefit of said ante-nuptial agreement, invested $8380 of the $12,000 in lot two in square one hundred and fourteen in Washington, which he caused to be conveyed to the defendant Matthews, as trustee, with power to make title to the premises as the defendant Nickerson might direct, and without the necessity of plaintiff's uniting in any conveyance that said trustee might make.

This purchase and arrangement, the bill alleges, was one step in a conspiracy formed by her husband with the defendant, Miss Carter, some time in the year 1880 — and to which conspiracy the defendant Matthews subsequently became a party — for the purpose of defrauding the plaintiff of her interest in the proceeds of the sale of the Portland property, for the benefit of said Carter, to whom he was to be married after being divorced from the plaintiff; that as the initial step in that conspiracy, her husband represented to her in July, 1880, that he was much in debt, and that it would be in the line of economy if she would reside for a time in Europe, where the cost of living was slight, and the facilities for educating their daughter abundant; that, although unwilling to be separated from her husband, she assented to his wishes, and, with her daughter, sailed for Europe on the 9th of July, 1880, her husband accompanying them to the steamer, and parting from her with every manifestation of love and affection; that, immediately after her departure for Europe, the defendant went to Philadelphia, and there rented rooms for the purpose of acquiring a pretended residence as a basis of proceedings for divorce in one of the courts of that city; that,

after the expiration of the statutory period, to wit, on the 2d of May, 1882, while the plaintiff was still in Europe, he filed a libel for divorce, and, by means of false and perjured testimony, and without her knowledge or consent, obtained, March 31, 1883, a decree of divorce from her; that of the institution of said suit and of said pretended decree the defendants Carter and Matthews had knowledge; and that, as soon as plaintiff was informed of those proceedings she returned to this country, and, in a suit brought for that purpose, she obtained, on the 9th of June, 1883, a judgment annulling the decree of divorce as having been procured by fraud and perjury.

The bill further charges that on the 2d of April, 1883, two days after said pretended divorce, her husband and Miss Carter went to the city of Baltimore, and were there married; that, on the 31st of May, 1883, he directed Matthews to convey and he did convey to said Carter, by the name of Nickerson, his title and interest in lot two in square one hundred and fourteen, said Matthews and Carter, as well as her husband, being aware, at the time, of the pendency of the suit in Philadelphia to set aside the fraudulent decree of divorce; and that on the day last named her husband executed to said Lena a bill of sale of all his personal property in the city of Washington, including the household furniture which the plaintiff and her husband used in common prior to her going to Europe.

All of these acts, the bill charges, were in execution of a conspiracy between her husband and the defendants Matthews and Carter for the following purposes: 1. To get the plaintiff out of the country, beyond the reach and knowledge of what was going on; 2. To have the plaintiff divorced from her husband, so that he could marry the defendant Carter; 3. To defeat the trusts upon which her husband held the Portland property and the proceeds of its sale, and to place the right and title to the same in the defendant Carter.

The defendants Nickerson, Matthews, and Carter, in separate answers, deny every material allegation in the bill relating to them respectively; except, that the marriage of the latter with Major Nickerson, at the time and place stated in

the bill, is admitted. They also severally plead, in bar of the relief sought, the statute of frauds of both the State of Oregon and the District of Columbia.

The statutes of Oregon provide:

"§ 771. No estate or interest in real property other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law or by a conveyance or other instrument in writing subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law."

"§ 775. In the following cases the agreement is void unless the same, or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"1. An agreement that, by its terms, is not to be performed within a year from the making thereof."

"4. An agreement made upon consideration of marriage, other than a mutual promise to marry."

"6. An agreement for the leasing for a longer period than one year, or for the sale, of real property or of an interest therein.

"7. An agreement concerning real property made by an agent of the party sought to be charged, unless the authority of the agent be in writing." Oregon Code of Procedure, 1862 (1863), pp. 190 and 191, Title VIII, §§ 771 and 775; General Laws of Oregon (1845–1864), pp. 341 and 342, Title VIII, §§ 771 and 775; General Laws of Oregon (1843–1872), pp. 264 and 265, Title VIII, §§ 771 and 775.

The statutes upon which the defendants rely as being in force in the District of Columbia, and as applicable to the case, 29 Charles II. c. 3, §§ 4, 7, [the English Statute of Frauds], provide as follows:

"§ 4. No action shall be brought whereby to charge . . .

any person upon any agreement made upon consideration of marriage, or upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

"§ 7. And . . . all declarations or creations of trusts or confidences, of any lands, tenements, or hereditaments shall be manifested and proved by some writing, signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect." Alexander's British Statutes in force in Maryland, 509.

We are not permitted by the evidence in this cause to doubt that the appellee Nickerson induced his wife to go to Europe, with her child, in order that he might, in her absence and without her knowledge, procure a decree of divorce from a court having no jurisdiction to grant it ; or that, without her knowledge, he obtained such decree from the court in Philadelphia — in which city he acquired a merely fictitious residence — by making it appear that his wife had deserted him, and taken up her residence in Europe against his wishes, when, in fact, he induced her to go abroad, substantially directed all of her movements while away, and, in frequent letters, covering the entire period from the date of her departure up to the institution of the suit for divorce, expressed warm affection for his absent wife. Indeed, a few weeks after he commenced his suit for divorce, he inclosed to his wife a draft for one thousand marks to cover her future expenses; his letter, transmitting the draft, being couched in such language as a faithful husband would use when communicating with his wife by letter. Nor can it be doubted that before the rendition of the decree for divorce, an understanding was reached between him and Miss Carter that they would intermarry as soon as he obtained a decree divorcing him from his wife. It is difficult to conceive of a clearer case of wrong and perjury than is disclosed

in the record upon the part of Major Nickerson towards his wife in reference to the proceedings instituted by him for divorce. If our decision depended upon the facts just stated, we should have no hesitation in granting the relief the appellant seeks. But the court would be unmindful of its duty to administer justice according to the settled rules of law, if it permitted the feelings naturally excited by the conduct of the husband in relation to that divorce, to control its investigation of the primary question, whether there was between him and his wife, prior to and at the time of their marriage, and as the consideration of the marriage, such an agreement as that set out in the bill; and if so, whether the agreement is of such nature, or has been so clearly established, as to authorize a court of equity to give the relief asked. It is entirely consistent with the perfidy practised by the husband towards the wife, in the matter of the fraudulent divorce, that no such agreement as that alleged was ever made, as the consideration of their marriage. If such an agreement was not made, or, supposing it to have been made, if it cannot, under the circumstances and the proof, be properly made the basis of a decree affecting the ownership of the lot conveyed by Matthews to the appellee Carter, the legal result cannot be changed by the fact that the husband, many years after the marriage, and by means of false evidence, obtained a divorce from his wife.

Even if the statutes of Oregon, where the agreement is alleged to have been made, or the statutes of Maryland, in force in this District, do not prevent relief being given in cases of fraud practised by a defendant pleading the statute of frauds, or when part performance is relied upon to take the case out of the statute, we are constrained to hold, upon a careful scrutiny of all the evidence, that the proof of the existence of the agreement is not of that satisfactory character required by the recognized principles of equity. Whether specific performance shall be decreed in any case depends upon the circumstances of that case, and rests in the discretion of the court. *King* v. *Hamilton,* 4 Pet. 311, 328; *Willard* v. *Taylor,* 8 Wall. 557, 564; *Waters* v. *Howard,* 1 Maryland Ch. 112; *Duvall* v. *Myers,* 2 Maryland Ch. 401. "Not indeed," Mr. Justice

Story says, "of arbitrary or capricious discretion, dependent upon the mere pleasure of the judge, but of that sound and reasonable discretion which governs itself as far as it may by general rules and principles; but at the same time which withholds or grants relief, according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties." 1 Story Eq. Jur. § 742. One of these rules is, that in cases of this character relief should not be granted, after an unreasonable delay, or unless the proof is clear and satisfactory, both as to the existence of the agreement and as to its terms.

In our judgment the proof fails to show such an agreement between Nickerson and wife as could be made the basis of a decree in her behalf. The allegations of the bill are expressly denied by the answer; and the statements of the wife in her deposition are flatly contradicted by the husband in his deposition. The only other witness in the cause in behalf of the plaintiff is her mother, and the deposition of the latter was not taken until nearly fifteen years after her daughter married the defendant. It contains a detailed account of an interview with him at the time she visited Portland, in the spring of 1870, for the purpose of personally expressing her opposition to the marriage of her daughter to Major Nickerson. In recalling what then passed between herself and him, she was not aided by any contemporaneous memorandum of what occurred. It is true that in her deposition, as well as in that of the appellant, are to be found such words and phrases as "agreement," "promised," "promised and agreed," "promise and agreement," "understood and agreed," "in consideration of marriage," and "marriage settlement and gift." But there is strong internal evidence in the depositions that these words and phrases — if not suggested by others familiar with their import — were not used or understood by the witnesses in their technical legal sense. Their evidence, in connection with all the circumstances of the case, especially the lapse of time, should be regarded as establishing, at most, only an honest belief and expectation upon the part of the appellant and her mother, before and at the time of the marriage, superinduced

by the general conduct or loose expressions of the defendant, that he intended, at some time after marriage, to provide his wife with a permanent home out of the proceeds of the sale of the Portland property. It is the case of a husband, who, prior to marriage, induced in the mind of his intended wife expectations in reference to real property which, after marriage, he failed to meet, but in respect to which property he did not enter — and, perhaps, intentionally refrained from entering — into any distinct and binding agreement.

She purposely forebore, as her bill shows, from having the Portland property conveyed to trustees for her benefit, and permitted the title to remain in the husband, in order that it might be easily handled, and in the belief that he would act in good faith toward her. She relied upon his honor, and has been deceived. But those facts, however strongly they appeal to our sympathy, cannot justify the court in finding, upon the meagre evidence in this cause, that there was an *agreement* upon his part, in consideration of marriage, to settle upon her either the property in Portland or the property purchased with the proceeds of its sale.

There is another serious obstacle in the way of granting to the appellant the relief she seeks. It is not proved, with sufficient certainty, that any part of the proceeds of the Portland property was, in fact, applied to the purchase of the lot in square one hundred and fourteen. If it did not, there is no ground, in any view of the case, upon which a trust could be fastened upon that lot for the benefit of the appellant.

In view of what has been said it is unnecessary to consider the question, so fully discussed by counsel, and so elaborately examined in the adjudged cases, as to whether marriage itself, standing alone, can be deemed part performance of an agreement as to lands, which otherwise could not be enforced with due regard to the letter and spirit of the statute of frauds.

Upon the whole case, we feel bound to hold that the appellant has not established sufficient grounds for the relief asked, and the decree must be

*Affirmed.*