(23 Misc. Rep. 714.)

WILSON v. HEATH et al.

(Supreme Court, Trial Term, Orleans County. June, 1898.)

1. EQUITY PRACTICE—TRIAL—VERDICT OF JURY—WEIGHT.
   In applications for equitable relief, where the evidence in support of a finding by the jury is improbable and uncertain, the verdict should not be permitted to dominate the disposition of the case by the trial court.

2. WILLS—CONTRACTS TO BEQUEATH—SUFFICIENCY OF EVIDENCE.
   The issue was the existence of an oral agreement whereby, in consideration of plaintiff becoming a member of testator's family, as a daughter, and remaining until her marriage, testator was to clothe and educate her, and at his death all his property, less the widow's legal estate, was to become plaintiff's; testator agreeing to make provision to effectuate such result. The agreement was supported by testimony of plaintiff's father and two brothers, who testified with almost uniform precision to the events, which occurred 20 years previously. On a former trial they testified merely that testator promised to give plaintiff a daughter's share in his property. In harmony with this earlier testimony, there was a written agreement, which was made several years after plaintiff went into the family, and also testimony of a witness to the original arrangement. Testator was unacquainted with plaintiff and her family when he took her, and he was living happily with his wife. Plaintiff fully performed her part of the alleged agreement, and was always treated by testator, and spoken of by him, as a daughter. *Held,* that the evidence was not sufficiently clear and convincing to justify a court of equity in enforcing the agreement.

Action by Lizzie Wilson against Maria Heath and others to compel the transfer and conveyance to her of the estate received by them from Orrin Heath, deceased, exclusive of his widow's dower interest therein. Dismissed.

Whedon & Ryan and George Raines, for plaintiff.
E. L. Pitts and S. E. Filkins, for defendants.

LAMBERT, J.   The finding of the jury is not a final determination, but evidential only, of the issues passed upon, and proper to be considered by the trial court upon an application for equitable relief.   It may be adopted or disregarded as justice and a due regard for the rights of the parties demand.   Vermilyea v. Palmer, 52 N. Y. 471;  Learned v. Tillotson, 97 N. Y. 1;  Acker v. Leland, 109 N. Y. 5, 15 N. E. 743;  Randall v. Randall, 114 N. Y. 499, 21 N. E. 1020. The practice enunciated by these authorities permits the consideration and determination of all the facts of the case by the trial court, and it is only when the conclusion reached by the jury has the support of evidence, of the force and convincing qualities required by the settled principles of equity, that it should be adopted as conclusive, and permitted to control the result of a controversy of this character. The contract in question, and by this action sought to be established and enforced, is so extraordinary in character and consequent results that the advice afforded by the verdict should not be given conclusive influence in determining the rights of the parties.   Ordinarily deference would and should be accorded the finding of a jury upon a disputed question of fact, but when the evidence which gives it support is improbable, uncertain, and doubtful, the verdict should not be permitted to dominate the disposition of the case.   The agreement alleged is, in substance, that in consideration of the plaintiff becoming a member of the family of the deceased, and remaining until the event of her marriage, in all respects conducting herself as a daughter, the deceased would educate and clothe her, and at his death whatever property he had, less the legal estate therein of his widow, should become the property of the plaintiff, and provision would be by him made to effectuate such result.   The enforceability of the agreement is assailed by the defendants for the reason, among others, that at the inception of the contract relation, and at all times during its performance by the plaintiff, the minds of the parties never met upon the measure of compensation, in money or specific property, that the plaintiff was to receive for the services in contemplation, and it was limited only by the uncertain contingencies of future events;  also, that by the terms of the alleged agreement there were no express or implied limitations upon the power or right of the deceased to dispose of his property during his lifetime.   There are reason and authority to support this contention.   Lisk v. Sherman, 25 Barb. 434; Shakespeare v. Markham, 10 Hun, 311, affirmed in court of appeals, 72 N. Y. 400;  Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332.   In the last case cited, Barrett, J., says:

"We have, however, found no case in this state where an agreement to leave the whole of one's estate, real and personal, to a particular person, has been enforced.   On the contrary, there are cases where specific performance of such a contract has been refused."

The case of Godine v. Kidd, 64 Hun, 585, 19 N. Y. Supp. 335, much relied upon by the plaintiff, presents a statement of facts that substantially quadrate with the allegations made by the plaintiff;  and the court there permitted execution of the agreement, but put its decision upon the express ground that the judgment would effectuate the intent and purpose of all the parties thereto.   In many of the

states the more liberal doctrine is adopted, that contracts like the one in question, when clearly and unequivocally established, and fully executed by one party, are enforceable. Jaffe v. Jacobson, 4 U. S. App. 4, 1 C. C. A. 11, and 48 Fed. 21; McKinnon v. McKinnon, 5 C. C. A. 530, 56 Fed. 409; Kofka v. Rosicky, 41 Neb. 328, 59 N. W. 788; Sutton v. Hayden, 62 Mo. 101; Sharkey v. McDermott, 91 Mo. 655, 4 S. W. 107; Brinton v. Van Cott (Utah) 33 Pac. 218; Van Dyne v. Vreeland, 11 N. J. Eq. 370.

In the measure of equitable relief to be given to a party who has faithfully performed the obligations of a contract made by the parents of a party while in infancy with parties having no offspring, and contracting for parental relations, and where the parties are adults, and therefore presumed to occupy positions of equality in making and performing the contract, a distinction is manifest in the cases. Where the services and companionship of infants during minority are the subject of contract,—attributes of confidence and mutual consideration, arising from affection and acts of kindness, which have no exact, measurable quality, and yet may constitute the substantial element of benefit, in the estimation of the contracting parties,—it has been held that execution of such a contract by a court of equity is the only commensurate relief to the full and complete performance by the infant. The ultimate disposition that I feel constrained to make of this case renders it unnecessary to do more than to follow the adjudication heretofore made in this action upon the issue of law raised by demurrer to the complaint. It was there decided that the complete and full performance of the agreement alleged, by the plaintiff and her parents, made the promise on the part of the deceased operative, and a trust was imposed upon his property, which is enforceable in equity, as against his devisees and heirs at law. Heath v. Heath, 18 Misc. Rep. 521, 42 N. Y. Supp. 1087. The judgment sought in this case, if granted, will have the result of rendering ineffectual the testator's will, and passing to the plaintiff the title to all the property left by him at his decease, subject only to the claims made thereto by law for the widow. Justification for such a judgment can only be found in a contract fully executed by the plaintiff, definite and certain in every essential, and made to appear by clear and convincing proof; and such is the doctrine of all the cases which have been cited by counsel, or which I have been able to find. If, therefore, the proof submitted does not bring the case within the rule requiring execution of the contract alleged, then the parties must be left to their redress at law. Lisk v. Sherman, 25 Barb. 434; Shakespeare v. Markham, 10 Hun, 311, affirmed 72 N. Y. 400; Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332; Godine v. Kidd, 64 Hun, 585, 19 N. Y. Supp. 335; Nickerson v. Nickerson, 127 U. S. 668, 8 Sup. Ct. 1355; Hennessey v. Woolworth, 128 U. S. 438, 9 Sup. Ct. 109; Dalzell v. Manufacturing Co., 149 U. S. 315, 13 Sup. Ct. 886.

A careful examination of the proof, drawn from an analysis of the evidence, and the circumstances surrounding the parties, leads me to the conclusion that the plaintiff has failed to establish a case justifying specific performance of the contract alleged, within the rule required by the authorities. The proof must be clear, and leave no

essential element of the contract in doubt. This is the burden placed upon the plaintiff both by reason and the authorities. To meet it, the plaintiff relies upon the evidence given by her father and two brothers respecting the occurrences which took place between the deceased and her father in the spring of 1871. By them is recited the essential details of an agreement, which, if performed by the plaintiff, entitles her to the entire estate left by the deceased, provided only that both should live until the plaintiff reached the age of 21 years. Not only is the promise of the deceased to make the plaintiff the recipient of all the estate that a child of his own blood would take, he dying intestate, made plain and amplified by its varied connection during the course of the examinations; but it is stated by each, with almost uniform precision, when asked how he was to accomplish such a result, that the testator replied that he would do whatever was necessary to pass his property to the plaintiff upon his death. These three witnesses were sworn in behalf of the plaintiff, in an action to recover the value of the testator's property, upon this same subject; and the record evidence of that trial will be searched in vain for any reference to the subject of making over all of his property, subject to his widow's right, to the plaintiff, or that he would give to the plaintiff an estate in the property left by him at his decease, such as a daughter would inherit, he dying intestate. It is there recorded that they severally testified, in substance, that he (the testator) agreed he would do by the plaintiff as if she were his own daughter, and, further, that she should have a daughter's share in all his property. Why this discrepancy in the two records containing the testimony of these witnesses upon the same subject? So far as the evidence of the brothers, William and John, is concerned, this fatal disparity cannot be excused as an accident; for their evidence on each occasion was taken by commission, in advance of the trial, and they were severally requested to detail the entire transaction in question. Upon the record made upon the former trial, all must concede that the agreement between the testator and the plaintiff's father, as indicated by the plaintiff's evidence, was so uncertain that it could not be made the subject of execution by a court of equity. The limit of obligation imposed by the recorded promise of the testator was to give the plaintiff a daughter's share in all of his property. The undertaking thus assumed left it optional with the testator to reward the plaintiff as he would a daughter, depending upon events which were then unknown and unknowable, while the obligation and duty imposed by the contractual relation now detailed impose an imperative requirement to make over whatever property existed at the time of his death to the plaintiff. The conflict in this evidence is irreconcilable, and so far discredits the evidence of these three witnesses, that, if otherwise uncontradicted, it could not be made the basis of the decree sought by the plaintiff in this case. Events of remote date, in detail, cannot be expected to be within the memory of a witness, and, in some part, circumstances attending a given occurrence may be reproduced in haze; but, if involving matters of interest, we must expect and require substantial memory of the substance. The unreliability of the evidence of the witnesses referred to is again disclosed and

made manifest by the terms of the alleged written and executed agreement by the testator bearing date August 20, 1877. The complaint in the former action contained the allegation that the parol agreement of 1871 was, in substance, reduced to writing by the parties in 1877, wherein it was provided that the testator should pay to the plaintiff the sum of $2,000, and furnish her a good outfit, in the event of her marriage before the death of the testator, and, further, that she should have a daughter's share in his property. This allegation had the support of the evidence of the witnesses mentioned, and the remarkable instance is presented, that no reference is made upon either trial, in the detailed account of the occurrences of 1871, to the promise of the testator to pay to the plaintiff $2,000, or furnish her an outfit. If, as alleged, the written agreement of 1877 was intended as evidential only of the parol agreement of 1871, it is incomprehensible that such important provisions should have been omitted or forgotten. It is equally pertinent to note the absence from the writing of any undertaking by the testator to give to the plaintiff, and make over to her, his entire estate, subject to the legal claims of his widow. In this respect the writing is in harmony with the evidence given on the former trial upon that subject, and in conflict with the version now detailed. The theory of the defendants, that the plaintiff became a member of the testator's family upon the understanding that, for the services she might render during her minority, the testator would maintain, clothe, and educate her, is more acceptable than the position sought to be maintained by the plaintiff. It has the support of the witness Fuller, who was present when the arrangement was made, and the well-nigh conclusive support of probability. It overtaxes the credulity of one to adopt the assertion that the testator, after passing nearly an expected life with the companion of his choice, who had aided him in his every endeavor to accumulate his moderate property, should, without the imposition of any condition for her support and maintenance in the event she should outlive him, agree to turn over his entire estate to a person with whom and whose parents he had not the slightest acquaintance. It is incredible. He knew nothing of her disposition, or whether she might develop to be an agreeable companion for either his wife or himself. No inquiry was made respecting her habits, temperament, or life, or respecting her parentage; and yet we are asked to believe that he selected her as his only beneficiary, to the exclusion of his wife, in the event she and his wife survived him. A conclusion involving such ingratitude and inhumanity must have better support than is found in the record in this case, before I can adopt it. It is possible that it is true, but improbable.

The claim is made that the evidence of the father and brothers of the plaintiff finds adequate corroboration, to satisfy the requirements made essential to specific performance, in the treatment of the plaintiff by the testator and his wife as a daughter, and the faithful conformity by her, in return, to an affectionate and obedient regard, as well as the admissions of the testator respecting the affection that he entertained for her, at various times. Undoubtedly, the plaintiff, by her submissive conduct, affectionate obedience, and attractive ways,

grew into the life of the testator and his wife; and a just pride by them in the development of her tastes, habit, and character was but a natural result.    The declaration that she was his daughter, and should eventually have all that he or they had, is equally as consistent with an expression of present gratification and attachment, as with attributing to the testator a disclosure of his contract obligations made years before.    The expression by the testator, that he regarded the plaintiff the same as he would his own child, and that he intended she should have his estate, has no necessary or logical connection with an agreement requiring such a disposition of his property.    On the contrary, it was the declaration of his present feeling and purpose, and as such could have no creative force as a contract obligation.    The undisputed fact that the plaintiff rendered faithful service to the testator and his family through a long period of time gives rise to an instinctive sense of justice that she should have some measure of relief, but, when the evidence is analyzed in the light of established rules applicable to a case of this character, the injustice which would result from the enforcement of the agreement becomes at once obvious.

The complaint should be dismissed upon the merits, but without costs to either party.

Complaint dismissed, without costs to either party.