## BANK OF PALMETTO v. HYMAN et al.

(Circuit Court of Appeals, Fifth Circuit. June 25, 1923.)

### No. 4018.

**1. Injunction ⚹118(4)—Bill held to show judgment without additional equitable relief would not be adequate remedy.**

A bill alleging that defendant bank had notified plaintiffs it had received deposits to their credit from their customer, which it subsequently refused to pay to plaintiff, and that unless restrained it would destroy or alter its records, so as to defeat the proof of the deposit to plaintiff's credit, *held* to allege sufficient facts to show that a mere judgment at law, without additional equitable relief sought, would be inadequate.

**2. Courts ⚹352—Transfer to law docket not required, as equitable ground existed when suit was brought.**

Equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv), requiring transfer to the law side if it appears that a suit commenced in equity should have been brought as an action at law, does not require such transfer, if in the situation as it existed at the time the bill was filed any equitable relief prayed for thereby could have been granted.

**3. Courts ⚹352—Giving bond to dissolve injunction held not to entitle defendant to transfer to law side.**

Where a bill stated facts entitling a complainant to a temporary injunction to protect any recovery he might obtain by the final decree, the fact that, after a temporary restraining order was issued, defendant elected to give a bond to secure payment of the decree, and thereby obtained dissolution of the temporary restraining order, did not entitle defendant, under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv), to have the case transferred to the law side, especially where it was given the principal benefit it would have obtained from such transfer by the submission of the issues to a jury.

**4. Appeal and error ⚹1072—Decree not reversed for failure to set aside verdict on issues submitted, if court could have made same findings.**

A decree in equity will not be reversed, even though one of the grounds on which defendant sought to set aside the verdict of the jury on the special issues submitted to it was well taken, if the evidence would have justified the court in finding the facts as they were found by the verdict, since the court in rendering its decree was not bound by the verdict, but was at liberty to make its own finding.

**5. Banks and banking ⚹112—Liable on statement of deposit to credit of brokers, who expended money in reliance thereon.**

Where a bank stated to stockbrokers that credits in their favor had been created by E., a customer of theirs, and in reliance thereon the brokers expended the amounts of such credits on orders of E., the bank is liable, though it appeared that without the knowledge of the brokers the cashier of the bank, who sent the notice of credit, had given the orders in the name of E.

Appeal from the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Suit in equity by Alex Hyman and others, partners under the firm name of Alex Hyman & Co., against the Bank of Palmetto. Decree for complainants, and defendant appeals. Affirmed.

Victor Lamar Smith, of Atlanta, Ga. (Smith, Hammond & Smith, of Atlanta, Ga., on the brief), for appellant.

John D. Little, Arthur G. Powell, Marion Smith, and Max F. Goldstein, all of Atlanta, Ga. (Robt. H. Jones, Jr., Little, Powell, Smith & Goldstein, and Arthur G. Powell, all of Atlanta, Ga., on the brief), for appellees. ·.

Before WALKER, BRYAN,.and KING, Circuit Judges.

WALKER, Circuit Judge. The bill. in this case, filed on March 6, 1920, by the appellees against the appellant, a Georgia state bank doing business at Palmetto, Ga., contained allegations to the following effect: On February 26, 1920, appellant by telegram to appellees notified the latter that the appellant had placed to appellee's credit $5,000 on account of Edmondson. On February 28, 1920, appellant, by telegram and letter, notified appellees that $20,000 had been placed to appellees' credit by Edmondson. Upon appellees' receipt of said notices they requested appellant to send them New York exchange for the amounts stated to have been deposited to appellees' credit by Edmondson. Appellant failed and refused to comply with those requests, and did not send exchange, or otherwise remit the amounts of the stated deposits, aggregating $25,000. On March 5, 1920, appellees drew and presented their sight draft on appellant for $25,000. Appellant refused to pay that draft. When that draft was presented, and payment of it refused, appellant was paying checks drawn on it by other depositors. Appellant was then insolvent. Officers of the appellant have mutilated and destroyed records of the appellant, and intend to put evidence of its indebtedness to appellees out of the way and beyond the power'of the court to reach, unless such books and papers are promptly seized and taken possession of. Irreparable loss and damage will result to appellees, unless the court shall grant the temporary restraining order, the injunction, and receivership prayed for.

The bill, in addition to a prayer for judgment against appellant for the sum of $25,000, with interest thereon, contained prayers that appellant be enjoined, and, until injunction can issue, be temporarily restrained from the following acts: From paying out any money; from disposing of any assets of appellant; from removing, concealing, or otherwise putting beyond the jurisdiction of the court appellant's books, papers, writings, documents, and memoranda. The bill also prayed that a receiver be appointed to take charge of the affairs of the appellant. Upon the filing of the bill, and the presentation of it to the District·Judge, he made an order which included the following:

"It is further ordered that the defendant, the Bank of Palmetto, show cause before me on Monday, March 15, 1920, at 3 o'clock p. m., at the United States courtroom at Atlanta, Ga., why the injunction and receivership prayed for should not be granted.

"It being made to appear to the court by the allegations set forth in the bill that this order is necessary to prevent the immediate, irreparable injury, loss, and damage to the applicant before notice can be served and hearing had, it is ordered that in the meantime, and until otherwise ordered by the court, the defendant, its agents, officers, servants, employees, attorneys, and those in active concern or participation with them, are restrained from the following

acts, to wit: (1) From removing, concealing, destroying, altering, mutilating, or changing any of the books, writings, papers, or documents of the bank, or relating to its business or the account of the plaintiff with said bank. (2) From making any disposition of the assets of said bank whatever, except in the usual and normal course of business.

"Mr. Ronald Ransome is hereby appointed as custodian of this court for the following purposes: He is to take possession of the books, documents, writings, papers, and memoranda of said bank, wherever they may be found, tending to show its financial condition or to show the state of its account with plaintiff, and to hold possession of the same for the benefit of the court, but allowing the officers and agents of the bank access to the same for the usual and normal conduct of their business. He will investigate, as promptly as possible, into the financial condition of said bank, the state of its books and papers, it being the intention that at the present time he shall not undertake or assume the expense or labor of a complete audit of the bank, but shall make such summary investigation as will enable him to report to the court on the general solvency of the bank and the general condition of its books and papers, and specifically the condition of the books and papers relating to transactions with the plaintiff.

"This order to become effective upon the plaintiff making bond in the sum of five hundred ($500) dollars, conditioned to pay such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully restrained thereby."

The bond prescribed by that order was given March 6, 1920. On March 8 the appellant and sureties executed a bond in the sum of $50,000, payable to appellees, and conditioned as follows:

"Said plaintiff has filed suit against the principal of said bond in the United States District Court for the Northern District of Georgia for the recovery of twenty-five thousand dollars principal, with interest and costs. Said suit is in equity under a restraining order, and rule nisi was granted upon the same upon its filing. Now in consideration of the dissolution of said restraining order and vacating the said rule nisi, and in pursuance of an order of court with reference hereto, by consent of both parties to said litigation, the foregoing bond is executed and filed as part of the records in said case.

"Now, if the said principal shall well and truly pay the amount of any final judgment and decree in said case, together with interest and cost thereof, then this obligation to be void; else to remain in full force and effect. In testimony whereof the said principal and sureties have caused this bond to be executed in their respective names by their duly constituted officers, attorneys, and agents; the said W. D. Manley executing the same in his proper person."

That bond, after being approved in writing by appellees' solicitors, was filed with the clerk. Thereafter, and after appellees had filed their answer to the bill, which did not suggest a failure of the bill to show the inadequacy of the remedy at law, they filed a written motion that the case be transferred to the law side of the court. That motion contained the following:

"(1) That the plaintiff's suit is not a suit in equity, but is a common-law action. Being a claim for the recovery of an alleged debt owing to it by defendant, arising out of an alleged deposit to its credit in defendant bank, creating the relation of debtor and creditor. For the recovery thereof the complainant has complete and adequate remedy at law.

"(2) That there is no basis or foundation whatever in the case for a judgment or decree in equity for granting equitable relief of any character. The application for injunction and receiver has been abandoned. The defendant has given a $50,000 bond, as appears of record, conditioned for the payment of any judgment that the plaintiff might recover on its alleged indebtedness. Answer has been filed, denying such indebtedness, and the issue thus formed is an issue purely at common law."

In disposing of that motion the court stated:

"The substantial rights of both parties can best be practically preserved by retaining the case as a case in equity and ordering issues as to the liability of the bank to the plaintiff as its depositor to be made up and tried before a jury, at this term of the court, as at law; and it is so ordered."

[1] It seems that the allegations of the bill sufficiently showed that, unless some of the preventive equitable relief sought was granted, or a substitute therefor was furnished, a judgment in favor of the appellees for the amount they claim would have been an inadequate remedy. Before the question of a transfer of the case to the law side was raised, the appellant treated it as a suit in equity by invoking the equitable power of the court to accept, in lieu of the pendente lite equitable relief sought, a bond, which could not have been required if the suit had been an action at law, and was given to procure a dissolution of the preliminary restraining order, without questioning the equitable jurisdiction of the court, which was exercised in making that order.

[2] But a motion for the transfer of the case to the law side not having been made in limine, it was enough to justify the court's refusal to grant that motion that the bill contained prayers, based on facts alleged, for such distinctively equitable remedies as an injunction and the appointment of a receiver, which the court had jurisdiction to grant. Southern Pacific R. Co. v. United States, 200 U. S. 341, 26 Sup. Ct. 296, 50 L. Ed. 507; McGowan v. Parish, 237 U. S. 285, 35 Sup. Ct. 543, 59 L. Ed. 955. If, in the situation shown by the averments of the bill to exist at the time it was filed, any equitable relief prayed for was grantable, the case was not one required by equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv) to be transferred to the law side, as that rule does not require such transfer unless it appears "that a suit commenced in equity should have been brought as an action at law on the law side of the court."

[3] The act of the appellant, after the suit was brought, in rendering unnecessary the granting of any equitable relief sought by giving the above-mentioned bond, did not make the suit one which should have been brought as an action on the law side of the court. The right to file a bill in equity depends on the state of facts existing when the suit is brought. Equitable jurisdiction, having once been properly assumed, should be maintained to the end of the litigation. Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 Sup. Ct. 118, 67 L. Ed. ——. Furthermore, the action of the court in denying the motion to transfer the case to the law side did not affect the substantial rights of the appellant. The principal benefit to the appellant of such a transfer would have been to entitle it to a trial by a jury of the issues of fact presented. It had that benefit under the order made by the court, and the decree appealed from was based on the verdict rendered by a jury.

The appellees are cotton brokers in New Orleans, members of the New Orleans Cotton Exchange, and engaged in dealing with other members of that Exchange in executing orders for the purchase or sale of cotton for future delivery. For some time prior to the dates

of the above-mentioned telegrams and letters to them from the appellant, they had been acting under orders for the purchase or sale of cotton for future delivery transmitted to them through a broker in Atlanta, for the account and in the name of G. Edmondson. Evidence indicated that those orders were procured to be given by R. C. Bachellor, appellant's cashier, who wrote and sent the letters and telegrams to appellees; such orders being given to the Atlanta broker by one Bullard, who claimed to act for Edmondson, but in sending the orders really acted for Bachellor. The statements as to the making of deposits to the credit of appellees were false, no such deposits having been made. Bachellor acted fraudulently towards his principal in making such false statements as appellant's cashier.

The evidence adduced was such as to justify the court in directing the jury to make findings to the following effect: On the faith of the above-mentioned communications of appellant to appellees, the latter made and carried on contracts for the purchase or sale of cotton for future delivery on the New Orleans Cotton Exchange, thereby incurring liabilities that cost them $25,000. When appellees so dealt on the faith of those communications, they did not know, and did not have any reasonable ground to believe, that Bachellor, who acted for the appellant in sending those telegrams and letters, was appellees' customer, who gave orders under the name of Edmondson. The court submitted to the jury the question whether in any of the above-mentioned transactions appellees and Bachellor were engaged in unlawful gaming. The jury answered, "No."

[4] The court overruled a motion to set aside the verdict. The evidence adduced was such as to warrant the jury, or the court, in making the finding evidenced by the jury's answer to the question submitted. This being so, the decree is not subject to be reversed because of the overruling of the motion to set aside the verdict, though it might properly have been set aside on a ground urged, as the court in rendering its decree was not bound by the jury's verdict, and was at liberty itself to make a similar finding.

[5] A result of the appellees' lawfully expending $25,000 on the faith of appellant's statements to the effect that that amount had been deposited with it to the credit of appellees for the account of Edmondson was to make the appellant liable to the appellees for that amount. The contention in behalf of appellant that the evidence adduced required the conclusion that appellees were deprived of the right to recover by knowledge of or participation in Bachellor's proved intention to gamble is not sustained by the record. We conclude that the appellant is not entitled to a reversal on any ground urged.

The decree is affirmed.