**PEEBLES v. PRUDENTIAL INS. CO. OF AMERICA.**

**No. 8134.**

Circuit Court of Appeals, Sixth Circuit.
March 7, 1940.

Joseph S. Graydon, of Cincinnati, Ohio (Joseph L. Lackner, and Maxwell & Ramsey, all of Cincinnati, Ohio, on the brief), for appellant.

Michael G. Heintz and H. G. Hightower, both of Cincinnati, Ohio (Heintz & Heintz, and Hightower & O'Brien, all of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This action was originally instituted in equity by appellant, Emmett C. Peebles, for an accounting under an agency contract between him and the appellee, The Prudential Insurance Company of America. During the course of the proceedings certain information furnished by appellee dispensed with the accounting issue, and the case was submitted to the late Judge Hough, who heard the evidence, but died before rendering a decision. The parties agreed to resubmit on the record to Judge Nevin who dismissed plaintiff's petition.

Though the parties stipulated for the waiver of a jury on the law question arising in the case, assuming, without deciding, that the original action was cognizable in equity, it was entirely permissible for the trial court to adjudicate it accord-ing to the principles applicable without sending the case or question of law to the law side of court (Bank of Palmetto v. Hyman, 5 Cir., 290 F. 353), and even though it be considered an action at law, the record presents a reviewable question under Rules 46 and 52 of Civil Procedure, 28 U.S.C.A. following section 723c. Jackson County Mo. v. Alton Railroad Co., 8 Cir., 105 F.2d 633.

The facts are not in dispute and are substantially as follows:

The Proctor & Gamble Company, a large manufacturing enterprise of Cincinnati, Ohio, for many years had in operation a self-insurance plan for the protection of its employees against death, ill health, disability and accident, the maintenance expenses and reserves for which were derived from joint contributions of the company and its employees. Appellee wished to become the insurer for the Proctor & Gamble Company and to this end was urging it to discontinue its self-insurance and reinsure with it. Homer C. Cross, its Cincinnati, Ohio, manager, who had occupied that position for only two years in 1932, was unacquainted with the officers of the Proctor & Gamble Company. Appellant had been engaged as a life insurance broker in Cincinnati, Ohio, for more than twenty years and was also local agent for the Northwestern Mutual Life Insurance Company. In 1932, he was employed by the Kroger Grocery & Baking Company, another large corporation in Cincinnati, Ohio, to formulate for it and put into operation a group life, health and accident insurance plan on its employees and appellee became the insurer.

Prior to October 11, 1932, Cross sought appellant's services to assist in procuring insurance from the Proctor & Gamble Company because of his acquaintance with its officers and his reputation as an insurance broker, and a contract of employment was entered into between appellant and appellee which is embodied in a series of letters dictated by appellant, the first dated October 11, 1932, signed by Cross, and delivered to appellant which in substance invited him to assist Cross in procuring from Proctor & Gamble a group insurance contract embodied in a plan for submission to the company, which was then in preparation by the actuarial staff of appellee. On the same date, Cross signed and delivered to appellant a supplemental letter which in substance stated that he wished him to act as co-agent with him in the Proctor & Gamble

proposal then pending and promised to pay him for his services fifty percent of all first and renewal commissions arising from any "group life, health, accident, salary allotment or pension plan" adopted by the Proctor & Gamble Company and placed with the appellee.

By letter dated October 14, 1932, appellant accepted this employment on the terms stated in the letters and was duly licensed as an agent for appellee by the Commissioner of Insurance for the State of Ohio for this purpose. Appellee concedes that Cross was acting for it in the employment of appellant and that it is bound where Cross would be bound under the same circumstances.

Appellant and Cross, acting jointly, immediately commenced negotiations with the Proctor & Gamble Company for the consummation of the contract. In March and April, 1933, while these negotiations were pending and continuing, Lowe H. Wiggers, who had charge of the insurance department for Proctor & Gamble, without consultation with the appellant, tendered to Cross for issue with appellee, forty-three applications for ordinary life insurance on forty of its officers, who were indebted to the company in varying amounts. The insurance applied for was designated "Modified Five" meaning it was for a five-year term subject to extension at the end thereof with certain premium adjustments with the company as beneficiary. During the initial five years, the Proctor & Gamble Company was to pay the annual premiums on the policy and charge them to the insured employees' account, with credits to the account of all dividends on the policy, the cash surrender value of which was also to be credited if cancelled at the end of the five-year period. On the payment of the indebtedness to the company during the five-year term and on balancing his account with it, the policy reverted to the employee with the right to change the beneficiary.

Appellee accepted the applications and issued the policies aggregating the principal amount of $810,000 on which the Proctor & Gamble Company paid initial premiums of $8,292.65. The total first year and renewal commissions if the policies remained in force were $18,228.35, one-half of which appellant seeks to recover as due him under the contract.

■ Appellee contends that the phrases "group life," "group health," "group accident" and "group salary allotment or pension plan" in the insurance business, are words of art, with legal or technical signification and are to be given their technical meaning in construing the present contract.

If this contention be sound, the decree of the District Court must be affirmed because the evidence as to their technical meaning is conflicting. Neither party has presented any authority directly in point. In our opinion the language of the contract is not to be construed by giving the words employed their technical sense as used in an insurance policy but rather a reasonable interpretation. Nickerson v. Nickerson, 127 U.S. 668, 676, 8 S.Ct. 1355, 32 L.Ed. 314.

■ Customary rights and incidences universally attaching to the subject matter of a contract in the place where made are impliedly annexed to the language and terms of the instrument, unless expressly excluded.

■ We must undertake to arrive at the intention of the parties, not only from the words employed, but the connection in which used and the subject matter with reference to which they were contracting. One of the most satisfactory tests for the ascertainment of the true meaning of a contract is by placing ourselves in the position of the contracting parties and viewing all the facts and circumstances surrounding them to determine what was meant by the phrases and words of the instrument. A manifest intention thus appearing must prevail regardless of inapt expressions or careless recitals. Accumulator Company v. Dubuque Street Railway Company, 8 Cir., 64 F. 70; Reid v. Shaffer, 6 Cir., 249 F. 553. The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it, for it may be safely assumed that such was the intention of the parties themselves. The intent when apparent and not repugnant to any rule of law will control technical terms, for the intent, and not the words, is the essence of every agreement.

■ It plainly appears from the facts and circumstances here that the evident and sole purpose of the appellee was to procure insurance from the Proctor & Gamble Company on a group of its employees.

In our opinion, the parties intended that appellant should receive one-half of the commissions on any insurance policies on a group of employees of the Proctor & Gam-

ble Company secured by the joint efforts of himself and Cross, regardless of the form.

■ Appellant acted as middleman, his duty being to bring the parties together, leaving to them the consummation of the insurance. He was not to sell or to offer to sell but was simply to set in motion preliminary negotiations.

It is generally held that a selling agent is entitled to compensation if his agency is the procuring cause of the sale and when his communications with the purchaser have been the means of bringing the purchaser and his principal together, his right to compensation is perfect and if his principal assumes exclusive charge of the negotiations, dispensing with the further efforts of the agent, and varies the terms originally proposed, the fact that the same is made upon the substituted terms will not defeat the agent's compensation.

■ In construing the writings involved in this action, as we have said it is necessary to take into consideration the business to which the employment related and the duties the appellant was to perform in connection therewith. When this is done, it is clear that the broad general purpose of the employment was that the appellant should bring the appellee into negotiations with the Proctor & Gamble Company for the purpose of having appellee write insurance on its employees en masse under any plan satisfactory to The Proctor & Gamble Company which embodied its payment of the premium on those insured.

■ Appellee having obtained, presumably through the joint efforts of appellant and Cross, en masse insurance on the lives of a substantial group of the Proctor & Gamble employees, it paying the premium, the contract of employment was substantially accomplished and the agreed compensation became due.

For these reasons we conclude that because of the relationship of the parties and the facts and circumstances under which the contract was entered into and its language it may fairly and justly be held to cover the policies of insurance written.

It follows from what has been said that the trial court misconstrued the contract of employment.

The decree of the District Court is set aside, and the cause remanded for the entry of a decree awarding the appellant one-half of all the commissions received by H.

C. Cross from the appellee on account of premiums received by it on the present policies written on the employees of the Proctor & Gamble Company.