Edward C. STRADLEY, Appellant,

v.

SOUTHWESTERN LIFE INSURANCE
COMPANY, a Corporation,
Appellee.

No. 15676.

Court of Civil Appeals of Texas.

Dallas.

Nov. 4, 1960.

Rehearing Denied Dec. 9, 1960.

Carter, Gallagher, Jones & Magee, and Morton A. Rudberg, Dallas, for appellant.

Swift, Walsh & McCarroll, James P. Swift, Dallas, for appellee.

YOUNG, Justice.

We accept appellant's statement of nature and result of suit in trial court; in effect, that his action against defendant Insurance Company was for recovery of commissions "upon a policy of life insurance written by appellee;" that at close of testimony defendant filed motion for instructed verdict which was overruled. The case was thereupon submitted to a jury which returned answers favorable to appellant; the court thereafter overruling plaintiff's motion for judgment; to the contrary entering judgment for defendant non obstante veredicto pursuant to Rule 301, Texas Rules of Civil Procedure, from which final ruling this appeal is taken. Substance of the five jury issues and answers are shown in footnote.[1]

1. Issue 1, that defendant insurance company agreed to pay plaintiff Stradley a   commission for obtaining an insurance contract with Southwestern Bell Tele-

The eight points of appeal in the main relate to court error in grant of defendant's motion for judgment non obstante veredicto and overruling of his motion for judgment, because the evidence is sufficient to support the answers to all jury issues. Defendant's counter-points, to the contrary, uphold the trial court's entry of judgment in its favor; generally, because "there was no evidence to support the submission of all or any of the issues submitted"; and more particularly, (a) because of appellant's failure "to prove that he performed the contract of agency sued upon by procuring for appellee 'a contract of group insurance' on telephone company employees"; and (b) "because appellant failed to prove that the appellee received, obtained or made a contract of group insurance on telephone company employees".

Plaintiff's long established business in the City of Dallas was that of life insurance; his usual occupation that of soliciting agent for Connecticut Mutual, a company that does not write group insurance. Basic facts of this controversy may be regarded as undisputed; the following summary thereof being reflected in plaintiff's original (trial) petition; that as a result of his activities in the field of insurance, he had become widely acquainted with executive personnel of Southwestern Bell Telephone Company, both in Dallas and St. Louis, the latter's headquarters; learning on a trip to that city that the telephone company was contemplating the purchase of group life insurance for its employees; that plaintiff related these facts to various officers of defendant insurance company including its president, James Ralph Wood; it being de-

cided that procurement of such a contract would be desirable.

The record discloses that a letter was then formulated and written by plaintiff and Walter Graham, a Vice-President of defendant, signed by the latter, and sent on November 19, 1956 to Ross D. Hogan, Secretary, General Employees Benefit Committee, Southwestern Bell Telephone Company, St. Louis, reading in part: "It has come to our attention that several of the associated companies of the A. T. & T. are now in the process of installing group life insurance for their employees, and we are naturally eager to discuss this matter with you if the Southwestern Bell is considering doing the same thing. Ed Stradley tells me he was in St. Louis about a month ago and that he requested then to be permitted to submit a company to make a bid on this business. Inasmuch as his company, The Connecticut Mutual, does not write group insurance he has made an arrangement with one of our agencies for them jointly to represent Southwestern Life in this particular matter. With the thought in mind that you may be considering group insurance for your employees, we should like very much to arrange to discuss this with you and the other officials of your company. I should be privileged to meet with you and your officials in your St. Louis office to point out the advantage which we believe Southwestern Life Insurance Company has to offer you."

Above letter was not answered promptly, plaintiff telephoning Mr. Hogan long distance with respect to the delay. However, Mr. Hogan later telephoned defendant company through Vice-President Graham, stating that such letter had been referred to

phone Company; (2) that plaintiff was the procuring cause of the insurance contract in evidence written by defendant insurance company; (3) that the contract of insurance written by Southwestern Life Insurance Company following the conference with representatives of the Southwestern Bell Telephone Company, St. Louis, Missouri, was a contract within contemplation of the

agreement of the parties; (4) the contract of insurance executed by defendant insurance company will remain in effect for a period of ten years from date of issuance; (5) the average annual premium received by Southwestern Life Insurance Company for the insurance in question "for the third and subsequent policy years" is $256,069.23.

the company's legal department; Hogan calling attention to the fact that Southwestern Life was not authorized to do business in Missouri, the Telephone Company being primarily interested in placing the group insurance policy with a Missouri Company where maximum coverage for such type insurance was greater. In this connection it appears that on December 10, plaintiff had written the same Mr. Hogan on Southwestern Life Insurance Company stationery (copy to Walter Graham) stating in part: "While the Southwestern Life now operates in only three of the States covered by the Southwestern Bell, their letter to you of November 19 should possibly have stated this fact, and explained that their request for an interview was in case your Company decided to use more than one insurance carrier to underwrite the business."

Charles S. Drew, with Markham and Company, a large St. Louis Insurance agency, had theretofore been employed by the Telephone Company as consultant in matter of purchasing group life insurance for its employees; Mr. Drew, in due course, having telephoned President Wood to send one of his officers and an actuary to St. Louis for a conference. This was done and on arrival of these gentlemen in the office of Mr. Drew, they were told that the contract for group insurance had already been awarded to General American Life Insurance Company, a Missouri Corporation; that 60% of reinsurance was required, defendant company to be given 10% of such reinsurance if it wanted the business on a non-commission basis. Plaintiff was not consulted with respect to such acceptance of reinsurance by defendant but testified to expectance of commissions, had the basic policy of group insurance been awarded to Southwestern Life; such commissions to be shared with Gowdy Brothers, defendant's soliciting agents in its own department of group insurance.

Upon conclusion of above matters, Mr. Wood wrote plaintiff a letter, now quoted:

"Dear Ed: I regret that the Southwestern Bell Telephone Company decided to place its Group Insurance on its employees through a broker on a non-agent, non-commission plan. Although you were unable to get this business, we are appreciative of the friendship you evidenced for the Southwestern Life Insurance Company in the matter and I have been instructed by our Board of Directors to transmit to you the enclosed check of the Company in the amount of $1,500 as a token of appreciation of this friendship and the past favors you have shown to the Company. I trust you will accept this gift in the same spirit in which it is made. Cordially yours, J. R. Wood, President." Stradley responded the following day as follows: "Mr. J. R. Wood, President, Southwestern Life Insurance Company, Southwestern Life Building, Dallas, Texas. Dear Ralph: Thank you very much for your most cordial letter of January 30th, and for the enclosed gift of $1,500.00 from your directors. This whole case was a most difficult situation as it turned out and I think that you have been extremely fair in the way in which you have handled it. However, this came as no surprise to me as I think you know my opinion of your Company and its management. Kindest regards, 'Ed'." This $1,500 check was brought into the case in a defensive plea of estoppel; plaintiff by supplemental petition tendering the money back into registery of court along with allegations "That at the time plaintiff received the aforementioned letter and gift, he relied entirely upon the representations of the Defendant Corporation, which representations were to the effect that your plaintiff was not entitled to the commissions for which he now sues. That plaintiff accepted the gift of $1,500 and so advised the Defendant Corporation, solely in reliance on representations made to the plaintiff by the Defendant Corporation." Further allegations refuted said plea of estoppel; the money being tendered into court "for the purpose above stated to demonstrate his sincerity and prove his suit not to be merely vexatious."

In the record is a policy of group life insurance issued by General American Life Insurance Company of St. Louis, Missouri to Southwestern Bell Telephone Company; also a contract of reinsurance between above primary insurer (General American) and defendant Southwestern Life Insurance to the extent of 10% of the risk.

■ Unquestionably, plaintiff's claim against defendant is predicated upon an agency whose objective was the procurement of "a contract of group life insurance on Telephone Company Employees"; the initial letter to Southwestern Bell Telephone Company (to which plaintiff was a party) reflecting an understanding to that effect. Manifestly, the agreement thus declared upon must be ruled by Ware v. Poindexter Furniture & Carpet Co., 131 Tex. 568, 117 S.W.2d 420, 422, holding: "It is well established that the plaintiff who sues upon a contract must recover upon the contract alleged in his petition, and if the proof shows a contract essentially different from that alleged, he must fail in the action." On the other hand the subject matter of all jury issues and answers was predicated on an agreement of reinsurance; a thing entirely apart from the contract of group life insurance on Telephone Company Employees, made by the General American Life Insurance Company and an agreement that could be completely terminated without affecting such policy on Telephone Company Employees. " 'Reinsurance contracts' are not policies of insurance, nor contracts of insurance, as that term is generally understood. The parties to such a contract are engaged in a kind of joint enterprise in nature of copartnership, and do not insure property, but only engage to indemnify against liability upon policies or contracts issued to owners of property." Cunningham v. Republic Ins. Co., 127 Tex. 499, 94 S.W.2d 140. See also 24–B Tex.Jur. p. 980 and cases there cited, stating uniformly that reinsurance is a contract whereby, for a consideration, one agrees to indemnify another, wholly or in part, against loss or liability by reason of a risk the latter has assumed under a separate and original contract with a third party, the original insurer.

But appellant says that "the contract of reinsurance which the defendant has, and the manner in which it was received, it must, by all the evidence, be said to have been reasonably contemplated as the type of business which the plaintiff had agreed to solicit." He points to his initial contract with Mr. Hogan; the statement of Vice-President Graham that at no time did he have any contacts with personnel of General American Life Insurance Company, all arrangements as to group insurance and percentages of reinsurance being made by persons representing the Telephone Company; the notification that defendant had been selected as reinsurer to extent of 10% of the risk, coming not from General American—but from Mr. Lattin, Vice-President of the Telephone Company; answered by a letter of thanks and appreciation on part of President Wood; then arguing that from these letters at least the jury could reasonably infer that this reinsurance business had come from the Telephone Company.

■ Notwithstanding above argument, the agreement of reinsurance between the primary insurer and defendant was quite aside from the cause of action as pled; plaintiff having wholly failed to sustain the burden of establishing a procurement for defendant "a contract of group insurance on Telephone Company Employees." It may be that this reinsurance was a by-product or aftermath of plaintiff's efforts; a result which defendant recognized by its $1,500 check, as a sort of "finder's fee" or honorarium in view of the lost group life insurance business. However, plaintiff had no contract with defendant company involving reinsurance.

It is insisted by appellant that the facts and law of Peebles v. Prudential Ins. Co. of America, 6 Cir., 110 F.2d 76, 78 are identical with and controlling of the case at bar.

No close analogy is seen. There, plaintiff Peebles, as co-agent and broker, was promised for his services, 50% of all first and renewal commissions arising from any "group life, health, accident, salary allotment or pension plan" adopted by Proctor & Gamble Company and placed with defendant Prudential; the commissions claimed involving 43 applications for ordinary insurance on 40 of its officers who were indebted to Proctor & Gamble in various amounts. It was simply held that the commissions were due; the agency of Peebles being described by the court in that case as follows: " * * * the broad general purpose of the employment was that the appellant should bring the appellee into negotiations with the Proctor & Gamble Company for the purpose of having appellee write insurance on its employees en masse under any plan satisfactory to The Proctor & Gamble Company which embodied its payment of the premium on those insured."

All points of error upon careful study are overruled and judgment of the trial court is affirmed.

THOMAS, J., not sitting.