122 Ill.2d 555 (1988)
524 N.E.2d 538
In re LIQUIDATIONS OF RESERVE INSURANCE COMPANY et al. (American Re-Insurance et al., Appellants,
v.
John E. Washburn, Director of Insurance, et al., Appellees).
No. 66033.
Supreme Court of Illinois.
Opinion filed May 18, 1988.
*556 Phelan, Pope & John, Ltd., of Chicago (John M. Christian and Michael M. Marick, of counsel), for appellants.
Samuel K. Skinner and James R. Stinson, of Sidley & Austin, and Jeremiah Marsh, John N. Gavin and Joseph F. Griffin, of Hopkins & Sutter, all of Chicago, for appellee John E. Washburn.
Hugh C. Griffin, Don W. Fowler, Rowe W. Snider and Kathryn G. Montgomery, of Lord, Bissell & Brook, of Chicago, for appellee Illinois Insurance Guaranty Fund.
Marc J. Calfen, of DeHaan & Richter, P.C., of Chicago, and Karl L. Rubinstein, Jeffrey L. Wood and Robert N. Nunnally, Jr., of Rubinstein & Perry, of Dallas, Texas, for appellee Texas Property and Casualty Guaranty Association.
Kahn & Robinson, of Chicago (Carole J. Olson, of Kansas City, Missouri, of counsel), for amicus curiae National Association of Insurance Commissioners.
Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (William G. Swindal and Joshua G. Vincent, of *557 counsel), for amici curiae fifteen nonresident State insurance guaranty funds.
Motion allowed; circuit court affirmed.
CHIEF JUSTICE MORAN delivered the opinion of the court:
In separate proceedings in the circuit court of Cook County, Reserve Insurance Company (Reserve) and Security Casualty Company (Security) are undergoing liquidations pursuant to article XIII of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1981, ch. 73, par. 799 et seq.). John E. Washburn, Director of Insurance (Director), as the liquidator of Reserve and Security, filed a petition in each of the liquidation proceedings requesting the court to determine that all claims against Reserve and Security as reinsurers are "claims of general creditors" under section 205(1)(d) of the Code (Ill. Rev. Stat. 1981, ch. 73, par. 817(1)(d)). The petitions also requested that the Director be allowed to defer payment of those claims of general creditors until after timely and allowed claims of higher priority under section 205(1) are paid in full. The circuit court consolidated the Reserve and Security liquidation proceedings for the purpose of deciding the Director's petition.
Several insurance companies with claims against Reserve and Security arising out of reinsurance agreements (Reinsureds) were allowed to intervene and filed statements arguing that their claims are entitled to third, rather than fourth, priority under section 205(1)(c) of the Code (Ill. Rev. Stat. 1981, ch. 73, par. 817(1)(c)). The Illinois Insurance Guaranty Fund and the Texas Property and Casualty Guaranty Association also intervened and filed statements in support of the Director's petition.
The circuit court ordered that all claims against Reserve or Security as reinsurers are "claims of general creditors" within the meaning of section 205(1)(d) of the *558 Code. We allowed a direct appeal to be taken to this court under Rule 302(b) (107 Ill.2d R. 302(b)). Taken along with the case is the Director's motion to strike that portion of the Reinsureds' reply brief which challenges for the first time the constitutionality of certain applications of section 205 of the Code.
The issue presented for review is whether claims arising out of reinsurance agreements between insurance companies are claims of "policyholders, beneficiaries [or] insureds * * * under insurance policies and insurance contracts issued by the [insolvent] company" (Ill. Rev. Stat. 1981, ch. 73, par. 817(1)(c)), or whether they are "claims of general creditors" (Ill. Rev. Stat. 1981, ch. 73, par. 817(1)(d)). The significance of the distinction is, of course, that claims under priority (d) are entitled to payment out of the general assets of the insolvent company only after timely and allowed claims under priority (c) are paid in full. If there are not enough assets to fully satisfy priority (c) claims, then priority (d) claims will receive nothing out of the liquidation proceedings. Finally, we must also rule on the Director's motion to strike a portion of the Reinsureds' reply brief.
This cause is essentially a declaratory action; therefore, the underlying facts are few and undisputed. Reserve and Security are insurance companies which dealt with, among other things, reinsurance. Pursuant to reinsurance agreements, Reserve and Security contracted with other insurance companies to cover claims paid by those reinsureds on policies of direct insurance or reinsurance which the reinsureds had issued to third parties.
Reserve became insolvent and was placed into liquidation by the circuit court of Cook County in 1979. Security also was placed into liquidation by the circuit court of Cook County in 1981. Both of those liquidation proceedings are still pending. Pursuant to section 193 of the *559 Code (Ill. Rev. Stat. 1981, ch. 73, par. 805), the Director acts as the liquidator of both Reserve and Security.
Numerous reinsureds which had not been paid by Reserve and Security under their reinsurance agreements timely filed claims with the Director. Claims also were filed by other creditors of Security and Reserve, including the Illinois Insurance Guaranty Fund and several other State guaranty funds.
The underlying issue in this case is the order in which certain claims shall be paid out of the liquidated general assets of Reserve and Security. Resolution of that issue requires us to interpret section 205 of the Code. In construing statutory provisions, it is axiomatic that the court must ascertain and give effect to the legislative intent (Page v. Hibbard (1987), 119 Ill.2d 41, 46), and that inquiry appropriately begins with the language of the statute (Metropolitan Life Insurance Co. v. Washburn (1986), 112 Ill.2d 486, 492). The meaning of a specific statutory provision is derived from an examination of the language and purpose of the legislation as a whole. (Massa v. Department of Registration & Education (1987), 116 Ill.2d 376, 386.) It is presumed that statutes which relate to one subject are governed by one spirit and a single purpose, and that the legislature intended the enactments to be consistent and harmonious. (People v. Maya (1985), 105 Ill.2d 281, 286.) Consequently, sections in pari materia should be considered with reference to one another so that both sections may be given harmonious effect. Maya, 105 Ill.2d at 287.
Section 205 of the Code is the controlling statute and provides in pertinent part:
"(1) The priorities of distribution of general assets from the company's estate is to be as follows:
(a) The costs and expenses of administration * * *.
(b) Wages actually owing to employees for services rendered * * * and secured claims * * *.

*560 (c) Claims by policyholders, beneficiaries, insureds and liability claims against insureds covered under insurance policies and insurance contracts issued by the company, and claims of the Illinois Insurance Guaranty Fund, the Life and Health Guaranty Association and any similar organization in another state * * *.
(d) All other claims of general creditors not falling within any other priority under this Section * * *.
(e) Claims of guarantee fund certificate holders, guarantee capital shareholders and surplus note holders.
(f) Proprietary claims of shareholders, members, or other owners." (Ill. Rev. Stat. 1981, ch. 73, par. 817(1).)
All claims against the insolvent company are "claims of general creditors" under priority (d), unless the claims fall within one of the other five priorities. Therefore, unless the claims of reinsureds fall within priority (c), the only possible applicable priority, then those claims are claims of general creditors under priority (d).
Under priority (c), aside from the claims of insurance guaranty funds, there are two general classes of claims. First, there are "claims by policyholders, beneficiaries [or] insureds." Second, there are "liability claims against insureds." However, both classes of claims, to fall within priority (c), must be "covered under insurance policies and insurance contracts issued by the company." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 73, par. 817(1)(c).) Therefore, the question in this case becomes whether the legislature intended to include reinsurance agreements within the terms "insurance policies" or "insurance contracts."
The Reinsureds assert that reinsurance is a form of insurance. According to the Reinsureds, case law and the insurance industry's common usage indicate that reinsurance agreements are in substance insurance contracts whereby one insurer is indemnified by another insurer *561 for loss under insurance policies issued by the reinsured to the public.
The Director responds that all of the States which have interpreted statutes similar to Illinois' have held that reinsureds are not entitled to the same priority as holders of direct insurance policies. The Director also points out that there is no reference in priority (c) to either reinsurance agreements or reinsured insurance companies. According to the Director, reinsurance agreements are much different in form and substance from ordinary direct insurance policies. Given those differences, the Director argues, a reference to insurance policies and contracts does not encompass reinsurance agreements.
A reinsurance agreement is different from a policy or contract of direct insurance in both form and substance. Under the Code, the term "reinsurance" has a specific meaning. Section 173 of the Code in particular ascribes a special meaning to the term "reinsurance agreement": an agreement between insurance companies whereby the reinsurer may "accept any part or all of any risks of the kind which it is authorized to insure" and the reinsured "cede[s] all or any part of its risks to another solvent company." Ill. Rev. Stat. 1981, ch. 73, par. 785.
Several aspects of reinsurance agreements may be noted by a review of section 173. First, reinsurance agreements may be entered into only by and between certain insurance companies. Insurers who negotiate and enter into reinsurance agreements do so from a substantially more equal bargaining position than do policyholders of direct insurance.
Second, a reinsurance agreement is distinct from and unconnected with the original insurance policy; the original policyholder  the entity whose loss is insured  is not a party to the reinsurance agreement. Moreover, there is no "risk" to "accept" or "cede" until an original contract *562 of insurance is made; the risk of the reinsured is always insurance liability  the liability to pay a claim under a direct insurance policy or contract  a liability or risk the direct insured can never have and which the reinsured cannot have until a direct insurance contract has been made.
It is thus apparent that the interest involved in a reinsurance agreement is different from that involved in a direct insurance agreement. Reinsurance is not a contract to insure those who face the risk of loss by fire or death or accident or any of the other hazards classified under section 4 of the Code (Ill. Rev. Stat. 1981, ch. 73, par. 616). Instead, an agreement of reinsurance is a promise by one insurance company to reimburse the original insurer should it be compelled to pay under the policy of direct insurance the insured who suffered the original loss.
The language of other sections of the Code indicates that that specific meaning of "reinsurance" was intended by the legislature to be separate and distinct from that of "insurance," that is, direct insurance. For example, article V 1/2, section 107.21 of the Code states in relevant part:
"The Exchange shall establish a facility for * * * statistical compilation of all insurance and reinsurance transactions involving a subscriber.
Scope: All monies due on contracts of insurance and reinsurance issued by syndicates shall be payable to the Exchange." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 73, par. 719.21.)
If "reinsurance" were intended to be included within "insurance," then the specific inclusion of "reinsurance" in the above-quoted section would be redundant and surplusage. See also Ill. Rev. Stat. 1981, ch. 73, par. 719.02 ("There is hereby created an exchange for the reinsurance and insurance of risks" (emphasis added)).
*563 Similarly, the language of several provisions in article VII of the Code indicates that "reinsurance" has a meaning separate and distinct from that of "insurance." For example, section 121-2 prohibits the transaction of insurance business in this State without a certificate of authority. (Ill. Rev. Stat. 1981, ch. 73, par. 733-2.) Section 121-3 defines the transaction of insurance business as including, among other things, the "making of, or proposing to make, as an insurer, an insurance contract." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 73, par. 733-3(a).) Accordingly, direct insurance contracts may be made only by insurers with a certificate of authority. However, section 121-2.02, read in conjunction with section 121-2, declares that the "lawful transaction of reinsurance by insurers" may be done without a certificate of authority. (Ill. Rev. Stat. 1981, ch. 73, par. 733-2.02.) Consequently, if the term "insurance contract" includes a reinsurance agreement, then sections 121-2 and 121-3 would require that reinsurance agreements be made only by insurers with a certificate of authority. However, that result would be in direct conflict with section 121-2.02. Therefore, the term "insurance contract" cannot include the separate and distinct concept of a reinsurance agreement.
In addition, we note that when the legislature intended reinsurance to be included within a particular section, "reinsurance" was explicitly mentioned. E.g., Ill. Rev. Stat. 1981, ch. 73, pars. 617, 671, 694, 711, 755.11, 756(4)(a), 767.9, 816, 974(a), 1065.18-3, 1065.407.
Accordingly, based upon a reading of the Code as a whole, the terms "insurance" and "reinsurance" have distinct and separate meanings. We therefore conclude that if the legislature had intended to include reinsurance agreements under priority (c) in section 205, it would have explicitly mentioned reinsurance agreements. However, because priority (c) is limited to certain claims *564 "covered under insurance policies and insurance contracts" and does not include claims under reinsurance agreements, all claims against Reserve and Security as reinsurers are "claims of general creditors" under section 205(1)(d).
That conclusion is consistent with this court's prior holdings that a contract of reinsurance is not one of insurance but simply one of indemnity, and that the contract of insurance and that of reinsurance remain totally distinct and unconnected. People ex rel. Baylor v. Highway Insurance Co. (1974), 57 Ill.2d 590, 594-95; Union Central Life Insurance Co. v. Lowe (1932), 349 Ill. 464, 469; Baltica Insurance Co. v. Carr (1928), 330 Ill. 608, 613; Vial v. Norwich Union Fire Insurance Society (1913), 257 Ill. 355, 358.
In addition, our conclusion is consistent with the holdings of our sister States. For example, in Neff v. Cherokee Insurance Co. (Tenn. 1986), 704 S.W.2d 1, and Foremost Life Insurance Co. v. Department of Insurance (1980), 274 Ind. 181, 409 N.E.2d 1092, the supreme courts of Tennessee and Indiana, respectively, interpreted statutes with language very similar to section 205 of our Code. Both courts held that claims under reinsurance agreements are not entitled to the same priority as those of policyholders of direct insurance. Earlier decisions involving claims by reinsured insurance companies against statutory bonds are to the same effect that reinsurance agreements are neither insurance contracts nor insurance policies. E.g., Peerless Insurance Co. v. Manson (1965), 27 Wis.2d 601, 135 N.W.2d 258; Stradley v. Southwestern Life Insurance Co. (Tex. App. 1960), 341 S.W.2d 195; Cunningham v. Republic Insurance Co. (Tex. App. 1936), 94 S.W.2d 140; Shepherd v. Virginia State Insurance Co. (1917), 120 Va. 383, 91 S.E. 140.
Neither our prior holdings nor those of our sister States are controlling here because the issue involved in *565 those cases was not an interpretation of the term "insurance" as used under the Code; however, those cases are certainly persuasive in that they demonstrate that within the insurance field and insurance law, there is a common and widespread distinction made between the concepts of direct insurance and reinsurance. We are convinced that our legislature was well aware of the difference between direct insurance and reinsurance as evidenced by its use of the distinct terms "insurance" and "reinsurance," and that the omission of an explicit reference to reinsurance in priority (c) was intentional.
We also reject the Reinsureds' assertion that policyholders of direct insurance do not need priority over reinsureds because the former are already fully protected under the Illinois Insurance Guaranty Fund and other State guaranty funds. The Illinois Guaranty Fund is funded by assessments charged to insurance companies which hold a certificate of authority to transact insurance business in Illinois. (Those insurance companies may pass the cost of the assessment on to the insurance consumer.) When a member company is declared insolvent, the Illinois Guaranty Fund pays a limited amount of "covered claims" against that company. According to the Reinsureds, only claims under direct insurance and not reinsurance agreements are protected by any guaranty funds. The Reinsureds apparently conclude that section 205(1)(c) cannot be meant to protect only direct insurance consumers because direct insurance consumers are already "fully" protected under the Illinois Guaranty Fund and consequently do not need any further protection under section 205(1)(c).
The Reinsureds' argument ignores the fact that the protection of the Illinois Guaranty Fund and other State guaranty funds is limited in several respects. First, there is a dollar limit on the amount to be paid on a claim against an insolvent company  for example, $50,000 per *566 claim in Indiana (Ind. Code § 27-6-8-1 et seq. (1986)) and $150,000 per claim in Illinois (Ill. Rev. Stat. 1985, ch. 73, par. 1065.87-2).
Furthermore, the protection of the Illinois Guaranty Fund is limited to Illinois residents or Illinois property (Ill. Rev. Stat. 1985, ch. 73, par. XXXX-XX-X) and the policyholders in other States are dependent on the laws of those States for protection. The policyholders of Reserve in three States  Oklahoma, New York and Arkansas  do not have such protection.
Moreover, the Illinois Guaranty Fund only protects policyholders of property and casualty insurance and not policies of life insurance, health insurance, accident insurance, mortgage guarantees, suretyship obligations and certain marine insurance (Ill. Rev. Stat. 1985, ch. 73, pars. 616, 1065.83). Nor does the Illinois Guaranty Fund protect policyholders of surplus-line insurance.
The Reinsureds also ignore the application of section 205 to a rehabilitation proceeding. Section 804(4) states in relevant part:
"Where in such [rehabilitation] proceedings the Court has entered an order for the filing of claims and it subsequently appears that the total amount of all allowable claims exceed the assets in the possession of the Rehabilitator, the Court may upon the application of the Director authorize a distribution of assets in accordance with the applicable provisions of Section 210." (Ill. Rev. Stat. 1985, ch. 73, par. 804(4).)
Section 210 provides in turn that the Director shall pay all allowed claims in accordance with the priorities set forth in section 205.
The protection of the Illinois Guaranty Fund, on the other hand, arises only after the entry of an order of liquidation against an insolvent company. (Ill. Rev. Stat. 1985, ch. 73, pars. 1065.82, 1065.84-4.) Consequently, the question of priorities under section 205(1)(c) arises in *567 situations where the protection of the guaranty funds does not exist, namely, in rehabilitations.
Therefore, the Reinsureds' assertion that the term "insurance" in section 205(1)(c) was not intended to be limited to direct insurance consumers because such consumers are already fully protected under State guaranty funds is false. The protection under guaranty funds is limited and does not even apply to rehabilitations. Thus, there is a real likelihood that many claims covered under insurance policies and insurance contracts will not be protected fully, if at all, under State guaranty funds. Priority (c) status is still required to further protect those claims. If anything, the Illinois Guaranty Fund Act and section 205(1)(c) both reflect the legislature's common purpose to prefer the interests of direct insurance consumers over those of reinsureds and reinsurers. We consequently do not find any relevance in Reinsureds' argument concerning guaranty funds to the question of the definition of "insurance" under section 205(1)(c).
We turn next to the Director's motion to strike portions of the Reinsureds' reply brief. At pages 23-24 of their reply brief, Reinsureds assert for the first time in this proceeding that if section 205 is applied to make the claims against Reserve and Security as reinsurers claims of general creditors under priority (d), then a retroactive application of section 205 would unconstitutionally impair contractual obligations. Section 205 became effective December 18, 1975. Prior to that date, the Code provided that only employee wage claims had priority and all other claims were left to share pro rata in the assets of the insolvent insurance company. The Reinsureds thus contend that section 205 cannot be applied in such a manner as to impair the obligations of contracts entered into before December 18, 1975.
Reinsureds failed to raise this constitutional argument in either the circuit court or in their initial brief *568 before this court. Questions not raised in the trial court are waived and may not be raised for the first time on appeal. (Shell Oil Co. v. Department of Revenue (1983), 95 Ill.2d 541, 550; Department of Public Works & Buildings v. Schon (1969), 42 Ill.2d 537, 538.) In addition, Supreme Court Rule 341(e)(7) provides that points not raised in an appellant's initial brief "are waived and shall not be raised in the reply brief." (107 Ill.2d R. 341(e)(7).) (See also Jenkins v. Wu (1984), 102 Ill.2d 468, 483; Board of Education v. Ballweber (1983), 96 Ill.2d 520, 527-28.) Accordingly, we find that the Reinsureds have waived the issue of the constitutionality of any application of section 205. The Director's motion to strike the portions of the Reinsureds' reply brief raising that waived issue is granted.
In conclusion, for the reasons set forth above, we hold that all claims against Reserve and Security arising out of reinsurance agreements are not included within section 205(1)(c) of the Code but rather are claims of general creditors under section 205(1)(d). The order of the circuit court is affirmed.
Motion allowed; circuit court affirmed.