E AND E HAULING, INC., Plaintiff-Appellant, v. GEORGE H. RYAN, as Secretary of State, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—97—3174

Opinion filed June 17, 1999.

Bruce J. Van Heukelem, of Hoogendoorn, Talbot, Davids, Godfrey & Milligan, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellees.

JUSTICE HALL delivered the opinion of the court:

This case involves a tax protest action in which the plaintiff, E&E Hauling, Inc. (E&E), challenges the Illinois Secretary of State's (Secretary) assessment of approximately $512,000 in franchise taxes, license fees, and penalties. Such taxes and fees are calculated on the basis of a corporation's paid-in capital. Following a stock sale transac-

tion between E&E's former sole shareholder and its acquiring sole shareholder, Browning Ferris Industries of Illinois, Inc. (BFI Illinois), E&E's paid-in capital was increased by nearly $58 million. This increase resulted from BFI Illinois' decision, pursuant to section 338 of the United States Internal Revenue Code (Code) (26 U.S.C. § 338 (1994)) and generally accepted accounting principles, to make certain push-down accounting adjustments to E&E's balance sheet. In this case we must decide whether an increase in paid-in capital resulting from push-down accounting adjustments to a corporation's balance sheet following a stock sale and section 338 election constitutes a statutory increase in paid-in capital for franchise tax purposes. We find that it does and affirm the judgment of the circuit court.

On November 7, 1986, BFI Illinois purchased 100% of E&E's stock from a private individual. No cash or assets from the stock sale went to E&E. By virtue of this stock sale, BFI Illinois became E&E's sole shareholder.

Following the stock purchase, BFI Illinois executed a section 338 election form choosing to treat the purchase of E&E stock as an asset purchase for federal income tax purposes. Section 338 of the Code allows a buyer to elect to treat its purchase of stock as an asset purchase and to restate the value of assets, liabilities and equity in the amount of the purchase price. This section 338 election allowed BFI Illinois to assign a value of approximately $58 million to a preexisting asset owned by E&E. BFI Illinois was able to increase the value of the asset to reflect its fair market value, and then to depreciate the asset for income tax purposes based on this new stepped-up value. Applying generally accepted accounting principles, BFI Illinois adjusted E&E's balance sheet to reflect this increase in the value of E&E's preexisting asset and the corresponding increase in E&E's paid-in capital. On its balance sheet, E&E debited the preexisting asset and credited paid-in capital. These adjustments are commonly referred to as push-down accounting adjustments.

E&E historically reported a paid-in capital of $400,000 to the Secretary. On June 29, 1992, E&E submitted a 1992 annual report reporting paid-in capital of $58,292,080 as of April 30, 1992. E&E also submitted a section 14.30 form which declared two increases in paid-in capital from 1986 and 1988, totaling $57,892,080. The Secretary calculated E&E's annual franchise tax based upon this reported paid-in capital. On December 22, 1992, the Secretary advised E&E that the total amount due for the franchise tax, license fee, penalty, and 1992 annual report fee was $512,846.88.

On December 31, 1992, E&E made payment under protest to the Secretary in the amount of $512,382.88. On January 15, 1993, E&E

filed its verified complaint for injunctive, declaratory and other relief, pursuant to section 2a of the State Officers and Employees Money Disposition Act (30 ILCS 230/2a (West 1996)), alleging that the Secretary unlawfully assessed E&E $512,382.88 in franchise taxes, license fees, and penalties for the period ending December 31, 1992, based upon the Secretary's assertions that E&E's paid-in capital was increased by $57,892,080. E&E alleged that the adjustment to its paid-in capital account was the result of the application of push-down accounting principles used solely for the purpose of financial and tax reporting to persons and agencies other than the Secretary. No additional capital was paid into the corporation, no new shareholders were added, no new stock was issued nor were there any stock dividends, stock splits or other similar increases in E&E's paid-in capital. Therefore, there had been no statutory increase in E&E's paid-in capital. E&E conceded a paid-in capital of $400,000.

On January 31, 1996, E&E filed a motion for summary judgment, arguing that no monetary value was actually added to E&E and that accounting entries made for income tax purposes reflecting an increase in paid-in capital have no bearing on the statutory definition of paid-in capital. The Secretary responded that summary judgment for E&E was inappropriate because E&E's paid-in capital had been increased without issuance of shares, when, through push-down accounting adjustments, a new basis was given to its assets, liabilities, and equity (including paid-in capital).

On October 9, 1996, the circuit court denied E&E's motion for summary judgment in a memorandum opinion, finding that an increase in paid-in capital resulting from push-down accounting adjustments constituted an increase in paid-in capital for franchise tax purposes. On May 27, 1997, the Secretary filed a motion for summary judgment. E&E did not respond. On July 21, 1997, the circuit court adopted its prior memorandum opinion and entered a final judgment in favor of the Secretary.

On appeal E&E contends that the circuit court erred in granting summary judgment in favor of the Secretary, finding that an increase in paid-in capital as a result of push-down accounting adjustments made following a stock sale and section 338 election constituted an increase in paid-in capital within the meaning of section 1.80(j) of the Business Corporation Act of 1983 (the Act) (805 ILCS 5/1.80(j) (West 1996)), and that the circuit court's holding created a nonuniform taxing classification in violation of the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2).

This case involves a grant of summary judgment. Our review of the circuit court's grant of summary judgment is *de novo*. *Espinoza v.*

*Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 649 N.E.2d 1323 (1995). Furthermore, this case involves an issue of statutory construction and a constitutional issue, both questions of law and both subject to our *de novo* review. See *Lucas v. Lakin*, 175 Ill. 2d 166, 676 N.E.2d 637 (1997); *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 665 N.E.2d 1346 (1996); *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 700 N.E.2d 181 (1998).

■ ■ Under section 15.35 of the Act (805 ILCS 5/15.35 (West 1996)), domestic corporations are subject to a franchise tax for the privilege of transacting business in this state. An annual franchise tax based on the amount of the corporation's paid-in capital represented in this state is due when the corporation files its required annual report. 805 ILCS 5/15.35(d), 15.40 (West 1996). The rate of the annual franchise tax is one-tenth of 1% of a corporation's paid-in capital, but not less than $25 or more than $1 million per year. 805 ILCS 5/15.45 (West 1996). Section 1.80(j) of the Act defines paid-in capital, in pertinent part, as:

"the sum of the cash and other consideration received, less expenses, including commissions, paid or incurred by the corporation, in connection with the issuance of shares, plus any cash and other consideration contributed to the corporation by or on behalf of its shareholders, plus amounts added or transferred to paid-in capital by action of the board of directors or shareholders pursuant to a share dividend, share split, or otherwise." 805 ILCS 5/1.80(j) (West 1996).

■ This case involves the interpretation of that statutory definition. In interpreting a statute our primary goal is to ascertain and give effect to the true intent and meaning of the legislature. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 561 N.E.2d 656 (1990); *Caterpillar Finance Corp. v. Ryan*, 266 Ill. App. 3d 312, 640 N.E.2d 672 (1994). Our search for legislative intent appropriately begins with the language of the statute. *In re Liquidations of Reserve Insurance Co.*, 122 Ill. 2d 555, 524 N.E.2d 538 (1988). The meaning of a specific statutory provision is derived from an examination of the language and purpose of the legislation as a whole. *In re Liquidations of Reserve Insurance Co.*, 122 Ill. 2d at 559.

E&E argues that the increase in its paid-in capital resulting from push-down accounting adjustments made to its balance sheet following the stock sale and section 338 election did not create a statutory increase in paid-in capital because no external value was ever added to E&E. E&E received no cash and no new assets as a result of the stock transaction.

■ The legislature expressly stated that paid-in capital includes

"amounts added or transferred to paid-in capital by action of the board of directors or shareholders pursuant to a share dividend, share spilt, or otherwise." 805 ILCS 5/1.80(j) (West 1996). Reading this language, it is clear that, by definition, paid-in capital includes amounts added or transferred into the paid-in capital account by internal transactions. Both a share dividend and a share split are internal transactions in which no cash or assets are received by the corporation. 11 W. Fletcher, Private Corporations §§ 5359, 5362 (rev. perm. ed. 1995). The legislature's intent to include internal transactions in the definition is further evidenced in section 14.20(a)(6) of the Act (805 ILCS 5/14.20(a)(6) (West 1996)), which expressly requires the reporting "of the amount added or transferred to paid-in capital of the corporation without the issuance of shares." The legislative intent was not to limit paid-in capital to cash and consideration paid into the corporation from external sources but, rather, to have paid-in capital also include amounts added or transferred to the paid-in capital account by virtue of internal transactions.

■ The issue then is whether an increase in paid-in capital due to push-down accounting adjustments made to a corporation's balance sheet following a stock sale and section 338 election is a statutory transfer to paid-in capital by action of the directors or shareholders pursuant to a "share dividend, share split or otherwise." 805 ILCS 5/1.80(j) (West 1996). To answer this question we must look to the statutory construction doctrine of *ejusdem generis*, which provides that when a statutory clause specifically describes several classes of things and then includes the word "other," the word "other" is interpreted to mean other such like things. *Coldwell Banker Residential Real Estate Services, Inc. v. Clayton*, 105 Ill. 2d 389, 475 N.E.2d 536 (1985); *Bell Federal Savings & Loan Ass'n v. Wagner*, 286 Ill. App. 3d 521, 675 N.E.2d 135 (1996). We must determine whether an increase in paid-in capital due to push-down accounting adjustments made following a stock sale and section 338 election is akin to a share split or a share dividend.

The franchise tax is based upon the value of a corporation's capital stock as reflected on the corporation's balance sheet. We fail to see how a share split could ever have any effect on the equity accounts of a corporation's balance sheet. A share split increases the number of shares but does nothing to increase or decrease a corporation's paid-in capital or capital stock. Because a share split means nothing in terms of a corporation's paid-in capital, it cannot be part of the string of phrases with which we compare "or otherwise."

This is not true of a share dividend. A share dividend is a purely paper transaction in which no money or assets are actually received by

the corporation. However, the corporation's paid-in capital is increased. The proper balance sheet entry for a share dividend is to debit retained earnings and credit capital stock.

In the present case, pursuant to section 338 of the Code and generally accepted accounting principles, BFI Illinois made push-down accounting adjustments to E&E's balance sheet to reflect an increase in the valuation of a preexisting asset. E&E debited the preexisting asset and credited capital stock or paid-in capital. If this was the proper balance sheet entry, the paper transaction at issue in this case is akin to and in fact no different from a share dividend. However, if E&E could have credited some balance sheet account other than paid-in capital or capital stock, something more like retained earnings, this transaction would not be akin to a stock dividend. We can think of no such account. A corporation that increases the value of a preexisting asset following a stock sale and a section 338 election in order to take into consideration its fair market value must credit capital stock or paid-in capital.

We see no difference between the transaction involved in this case and a stock dividend. Both are purely paper transactions in which capital stock or paid-in capital is affected. Therefore, we find under the doctrine of *ejusdem generis* that the phrase "or otherwise" in section 1.80(j) of the Act includes an increase in paid-in capital due to push-down accounting adjustments made to a corporation's balance sheet following a stock sale and section 338 election.

Relying on *Majestic Household Utilities Corp. v. Stratton*, 353 Ill. 86, 186 N.E. 522 (1933), E&E contends that tax statutes must be strictly construed. Courts must not extend or enlarge a tax statute beyond the clear import of its language. E&E argues that the inclusion of an increase in paid-in capital due to push-down accounting adjustments in the statutory definition of paid-in capital would violate this established principle of statutory construction.

The doctrine of *ejusdem generis* provides for a restricted interpretation of statutes. Under the doctrine we may not interpret "or otherwise" to mean anything we or the parties want it to. Rather, we must interpret "or otherwise" to mean only something akin to the specific things listed in the statute.

E&E would have this court completely ignore the "or otherwise" phrase put into section 1.80(j) by the legislature. E&E's interpretation renders the "or otherwise" phrase meaningless and unnecessary. The law is clear that we must construe a statute so that no word or phrase is rendered superfluous or meaningless. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 561 N.E.2d 656 (1990). Finding that an increase in paid-in capital due to push-down accounting adjustments made following a

stock sale and a section 338 election is a statutory transfer to paid-in capital pursuant to a "share dividend, share split or otherwise" does not extend or enlarge section 1.80(j) beyond the clear import of its language; it merely gives meaning to each word and phrase used by the legislature.

■ E&E further contends that no statutory increase in paid-in capital could have occurred here because there was no evidence that E&E's board of directors or its shareholder, BFI Illinois by its own board of directors, ever issued any resolution or written consent authorizing any change to E&E's historic paid-in capital.

Section 1.80(j) (805 ILCS 5/1.80(j) (West 1996)) provides that paid-in capital includes "amounts added or transferred to paid-in capital by action of the board of directors or shareholders." The language of section 1.80(j) does not require a written formal resolution. In fact, it does not even require action by the board of directors. Action by the shareholders is sufficient.

In the present case, E&E's sole shareholder, BFI Illinois, took action to add or transfer amounts to E&E's paid-in capital account. BFI Illinois executed the section 338 election form, choosing to treat its purchase of E&E's stock as an asset purchase for federal income tax purposes. By virtue of this election, BFI Illinois was able to assign a value of approximately $58 million to one of E&E's preexisting assets and to correspondingly transfer nearly $57 million to E&E's paid-in capital account. Because E&E's sole shareholder acted to increase E&E's paid-in capital, the requirements of section 1.80(j) have been met.

■ E&E next contends that the treatment of the stock purchase as an asset purchase pursuant to section 338 of the Code in essence resulted in the vertical merger of E&E and BFI Illinois. E&E further contends that, based on the Attorney General's informal opinion regarding vertical mergers and paid-in capital, it could not be liable for any additional franchise taxes. The Attorney General's opinion relied upon by E&E stated that a vertical merger involves the merger of a parent and a subsidiary. In the present case BFI Illinois and E&E did not merge. Rather, BFI Illinois acquired E&E, making E&E its wholly owned subsidiary. E&E remained a separate corporation with its own stock, assets and liabilities. The Attorney General's opinion also states that, in a vertical merger, the surviving corporation no longer owns any of the stock of the subsidiary. In this case BFI Illinois owns all of E&E's stock. No vertical merger occurred in this case.

■ E&E next contends that the circuit court's holding created a nonuniform taxing classification in violation of the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2). We find that

E&E has waived this argument by failing to raise it in the trial court. Questions not raised in the trial court are waived and may not be raised for the first time on appeal. *In re Liquidations of Reserve Insurance Co.*, 122 Ill. 2d 555, 524 N.E.2d 538 (1988).

E&E contends that it did not waive this argument because it was not until the trial court adopted its earlier opinion denying E&E's motion for summary judgment as the basis for granting summary judgment in favor of the Secretary that the unconstitutional classification came into being. Be that as it may, it does not change the fact that E&E never raised this issue in the trial court. E&E could have raised this issue immediately following the trial court's memorandum opinion denying E&E's motion for summary judgment. E&E did not. E&E could have raised this issue in a response to the Secretary's motion for summary judgment. E&E did not. (E&E filed no response.) E&E could have raised this issue in a motion for reconsideration of the trial court's grant of summary judgment in favor of the Secretary. E&E did not.

■■ Waiver aside, we would find no uniformity clause violation in this case. The uniformity clause provides:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2.

E&E contends that the circuit court's ruling created a new class of franchise taxpayers consisting of corporations, such as E&E, whose stock is sold to a new shareholder that chooses to treat the transaction as an asset purchase. This new class is being treated differently and being taxed using a different formula and at a higher rate than corporations whose stock has been sold to a purchaser that does not choose to treat the transaction as an asset purchase.

E&E is not being taxed using a "different formula" or at a "higher rate" than other corporations. All domestic corporations in Illinois pay an annual franchise tax of one-tenth of 1% of their paid-in capital. 805 ILCS 5/15.45 (West 1996). Section 1.80(j) is applied to all corporations to determine the amount of their paid-in capital. The fact that its application may have resulted in a heavier tax burden because of E&E's factual situation does not make the statute unconstitutional. A tax with a single formula applicable to everyone is not unreasonable simply because the particular circumstances of a particular taxpayer result in heavier taxation to that taxpayer. *Chicago & North Western Ry. Co. v. Department of Revenue*, 6 Ill. 2d 278, 128 N.E.2d 722 (1955).

To survive scrutiny under the uniformity clause, a nonproperty

tax classification must be based on a real and substantial difference between the people taxed and those not taxed and the classification must bear some reasonable relationship to the object of the legislation or to the public policy. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 665 N.E.2d 1246 (1996); *Archer Daniels Midland Co. v. City of Chicago*, 294 Ill. App. 3d 186, 689 N.E.2d 392 (1997). The scope of inquiry under the uniformity clause is relatively narrow. Statutes enjoy a presumption of constitutionality, and broad latitude is afforded to legislative classifications for taxing purposes. *Allegro Services, Ltd.*, 172 Ill. 2d at 250.

In *Venture Stores, Inc. v. Ryan*, 286 Ill. App. 3d 673, 678 N.E.2d 300 (1997), the fourth district held that the format for determining the annual franchise taxes of foreign corporations doing business in Illinois, as provided for in section 15.65(d) and section 1.80(j) of the Act, did not violate the uniformity clause. Venture argued that the statutory format for determining the basis for franchise taxes violated the uniformity clause because the tax scheme prevented corporations that reduced their capital through a capital distribution from reducing their paid-in capital, while corporations which reduced their capital by buying in their own shares were allowed to reduce their paid-in capital. Venture argued that there was no substantial difference between the two capital reductions.

The court in *Venture* noted that the concept of paid-in capital was significant not only in regard to franchise taxes, but also in regard to the protection the Act gives to shareholders or creditors. *Venture Stores, Inc.*, 286 Ill. App. 3d at 681. The concept of paid-in capital provides a framework for the internal organization and financing of a corporation doing business in Illinois. The court found a substantial difference between the two classes of transactions when it considered the protection to shareholders and creditors offered by each. The court went on to hold that a rational system of capitalization, which serves public policy, is a proper basis for the determination of a franchise tax. Considering the great deference given to the validity of statutory classifications, the court held that there was a rational basis for the classification at issue there.

In this case, a real and substantial difference exists between a corporation that has appreciated its assets and one that has not. The former has increased its net worth. A corporation like E&E, which sells its stock to a shareholder who chooses to treat the transaction as an asset purchase, appreciates the value of its assets and increases its net worth. *Venture Stores* suggests that the paid-in capital concept provides a rational system of capitalization and is a proper basis for the determination of a franchise tax which will survive a uniformity

clause challenge. Because of the great deference given to the validity of statutory classifications (*Allegro Services, Ltd.*, 172 Ill. 2d at 250; *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 606 N.E.2d 1212 (1992)), we find that there is no uniformity clause violation.

To summarize, we find: (1) that an increase in paid-in capital due to push-down accounting adjustments made to a corporation's balance sheet following a stock sale and section 338 election constitutes a statutory increase in paid-in capital for franchise tax purposes; (2) that there was sufficient shareholder action in this case to satisfy the requirements of section 1.80(j); (3) that no vertical merger occurred in this case; and (4) that E&E has waived its uniformity clause argument by failing to raise it in the trial court; however, waiver aside, we find that there was no uniformity clause violation.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SOUTH, P.J., and HOFFMAN, J., concur.