COVINGTON, APPELLANT, *v.* OHIO GENERAL INSURANCE COMPANY; U.M.C.–U.M.C. LTD., APPELLEE.

[Cite as *Covington v. Ohio Gen. Ins. Co.,*
99 Ohio St.3d 117, 2003-Ohio-2720.]

(No. 2001–1874—Submitted January 7, 2003—Decided June 11, 2003.)

PFEIFER, J.

{¶ 1} The issue before this court is whether an insurance company filing a claim in liquidation proceedings against an insolvent insurance company's estate for reinsurance benefits files as a Class 2 creditor or as a Class 5 creditor. See R.C. 3903.42. For the reasons that follow, we conclude that an insurance company with such a claim is a Class 5 creditor.

{¶ 2} Ohio General Insurance Company is a reinsurance company and, as such, entered into reinsurance contracts with appellee U.M.C.–U.M.C. Ltd. ("UMC") between 1981 and 1985. A reinsurance agreement is a contract in which a

reinsurance company agrees to indemnify an insurance company for a specified amount when the insurance company pays out on a policy issued to an insured.

{¶ 3} In 1990, Ohio General became insolvent and entered into liquidation. When an insurance company is in liquidation, the Ohio Superintendent of Insurance supervises the collection of the insurance company's assets in order to pay the insurance company's outstanding debts. R.C. 3903.18. Assets are disbursed according to a prioritization of creditors pursuant to R.C. 3903.42. In 1991, UMC was notified that to have its claims considered in the liquidation proceeding it must submit proofs of claim to the Superintendent of Insurance. UMC submitted proofs of claim, asserting that it was what is now a Class 2 creditor. See 1995 Sub.H.B. No. 374, Section 3, 146 Ohio Laws, Part III, 4478. A claimant is entitled to Class 2 status when it submits a proof of claim based on "claims under policies for losses incurred." R.C. 3903.42(B).

{¶ 4} The Superintendent of Insurance rejected UMC's assertion that it was a Class 2 creditor, determining that the reinsurance contract was not a policy qualifying for Class 2 status. The superintendent classified UMC as a Class 5 general creditor under R.C. 3903.42(E). UMC objected to this classification and filed a complaint in Franklin County Court of Common Pleas. The Franklin County Court of Common Pleas determined that the superintendent's classification was correct. Ohio General appealed, and the court of appeals reversed, determining that a reinsurance contract is a policy and, therefore, that UMC should be considered a Class 2 creditor.

{¶ 5} The cause is now before the court upon an allowance of a discretionary appeal.

{¶ 6} We conclude that the General Assembly did not intend the words "claims under policies for losses incurred" in R.C. 3903.42(B) to include a claim under a reinsurance agreement. First, the General Assembly uses different terms when referring to consumer insurance policies and reinsurance agreements. Second, including reinsurance claims in Class 2 would not be consistent with the other types of Class 2 claims. Accordingly, claims under a reinsurance agreement must be filed as Class 5 claims.

{¶ 7} The Superintendent of Insurance would have us decide this matter based on a number of nonstatutory reasons. The superintendent requests that we defer to the Department of Insurance's administrative interpretation of the statute. See *Collinsworth v. W. Elec. Co.* (1992), 63 Ohio St.3d 268, 272, 586 N.E.2d 1071. The superintendent directs our attention to the legislative history associated with the 1978 Insurers Supervision, Rehabilitation, and Liquidation Model Act, which is the version of the model act enacted by the General Assembly as R.C. Chapter 3903, including later comments of the National Association of Insurance Commissioners Financial Condition Subcommittee, Re-

habilitators and Liquidators Task Force, Model Act Working Group, 1989–1 NAIC Proc. 375, 451. The superintendent also cites decisions of other state courts interpreting their own statutes to exclude reinsurance claims. See *Foremost Life Ins. Co. v. Indiana Dept. of Ins.* (1980), 274 Ind. 181, 409 N.E.2d 1092; *In re Liquidations of Res. Ins. Co.* (1988), 122 Ill.2d 555, 120 Ill.Dec. 508, 524 N.E.2d 538; *Neff v. Cherokee Ins. Co.* (Tenn.1986), 704 S.W.2d 1.

{¶ 8} We agree that these reasons support the superintendent's interpretation of R.C. 3903.42(B); however, we prefer to base our holding on the text of the statute. The General Assembly generally differentiates between direct consumer insurance and reinsurance. The General Assembly uses "policy" at least 23 times in R.C. Chapter 3903 in situations that apply only to direct consumer insurance and not to reinsurance. See, e.g., R.C. 3903.31(A) (regarding any "insurer issuing assessable policies") and R.C. 3903.72(E) and (G)(1) (discussing valuation methods for all "policies, riders, and supplemental policy provisions" in a context that does not include reinsurance). In contrast, the General Assembly generally uses the words "contract" and (once) "treaty" when referring to reinsurance. See R.C. 3903.04(C)(2), 3903.09(C)(8), 3903.26(C)(1), 3903.32.

{¶ 9} The General Assembly uses "policy" in ways that imply that reinsurance is not within the meaning of "policy." In R.C. 3903.32, "policy" is used to differentiate between reinsurance and the reinsured risk. R.C. 3903.32 ("direct payment of the reinsurance to the insured or beneficiary of the insurance policy"). Further, the General Assembly uses the word "reinsurance" with "policy" when it intends to include reinsurance in the word "policy." See R.C. 3924.09(D) and 3956.04(B)(2)(b).

{¶ 10} We also find it useful to look at the other claims given priority by R.C. 3903.42(B) because the General Assembly is assumed to have intended a meaning of "claims under policies for losses incurred" that is consistent with the other types of Class 2 claims. See *Renfroe v. Ashley* (1958), 167 Ohio St. 472, 5 O.O.2d 154, 150 N.E.2d 50; *Smilack v. Bowers* (1958), 167 Ohio St. 216, 4 O.O.2d 271, 147 N.E.2d 499. The first of these other claims is a claim "against the insurer for liability for bodily injury or for injury to or destruction of tangible property that are not under policies." Consumer insurance policies cover similar losses. In contrast, the purpose of reinsurance agreements is to protect an insurer from a business risk, not from a loss occasioned by the destruction of property. 14 Holmes & Sutin, Appleman on Insurance (2000), Section 102.2. The second type of claim is a claim of a guaranty association. These associations fund the payment of direct consumer insurance claims submitted by insureds when their insurance company has become insolvent. Ohio guarantee associations do not pay claims under reinsurance agreements. See R.C. 3955.01(D)(2)(c) and 3956.04(B)(2)(b). A third type of claim given priority is a claim under a life

insurance policy or annuity. These claims compensate individuals for losses that stem from the chance occurrences of life and do not compensate businesses for the calculated commercial risks covered by reinsurance agreements. Couch on Insurance (3d Ed.1995), Sections 1.6 and 1.22. Finally, the statute gives priority to claims for unearned premiums, those paid in relation to an insurance policy that is prematurely terminated.

{¶ 11} In short, the purpose of the priority for Class 2 claims is to protect consumers who have purchased direct insurance and those in related situations, rather than to protect reinsured insurance companies. Interpreting "claims under policies for losses incurred" to be consistent with these other claims requires us to exclude reinsurance agreements.

{¶ 12} UMC would have us base our decision on the phrase "policy of reinsurance" as used in R.C. 3903.04(C)(2). However, this use of the phrase "policy of reinsurance" does not indicate that the General Assembly intended to include reinsurance in every use of the word "policy." We also reject UMC's proposal to apply the definition of "insurance" found in R.C. 3960.01(D), which includes reinsurance, to the word "policy" in R.C. 3903.42(B). UMC overlooked the fact that the definition does not apply to R.C. Chapter 3903 but rather is specifically limited to R.C. 3960.01 through 3960.13. R.C. 3960.01.

{¶ 13} For all of the above reasons, we conclude that R.C. 3903.42(B) does not include claims under reinsurance agreements within the ambit of Class 2 claims. We therefore conclude that claims under reinsurance agreements must be filed as Class 5 claims. Accordingly, the judgment of the court of appeals is reversed.

Judgment reversed.

MOYER, C.J., RESNICK, F.E. SWEENEY, SLABY, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

LYNN C. SLABY, J., of the Ninth Appellate District, sitting for COOK, J.

---

Porter, Wright, Morris & Arthur, L.L.P., Scott E. North and J. Kenneth Thien, for appellant.

Janik & Dorman and Steven G. Janik; D'Amato & Lynch, John P. Higgins and Maryann Taylor, for appellee.

Ross S. Myers, urging reversal for amicus curiae National Association of Insurance Commissioners.

Vorys, Sater, Seymour & Pease, L.L.P., F. James Foley and Michael Thomas, urging reversal for amicus curiae National Conference of Insurance Guaranty Funds.

Baker & Daniels, Charles T. Richardson and John R. Burns III, urging reversal for amicus curiae National Organization of Life and Health Insurance Guaranty Associations.